[No. D003736. Fourth Dist., Div. One. June 29, 1987.]

SAN MARCOS MOBILEHOME PARK OWNERS' ASSOCIATION et al., Plaintiffs and Respondents, v.
CITY OF SAN MARCOS et al., Defendants and Appellants;
SAN MARCOS MOBILEHOME OWNERS' COUNCIL, Intervener and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III, IV and V.

1494

COUNSEL

Peterson, Thelan & Price, Robert M. Gans and George B. Blackmar for Defendants and Appellants.

Bryans & House and L. Sue Loftin for Intervener and Appellant.

Swanson & Dowdall, Terry R. Dowdall, C. Brent Swanson and Jim P. Mahacek for Plaintiffs and Respondents.

OPINION

WORK, J.—This is an appeal from a judgment reversing two decisions of the San Marcos Mobilehome Rent Review Commission for lack of substantial evidence. We hold there is substantial evidence in support of the decisions and reverse the judgment.

I

This case involves two decisions of the San Marcos Mobilehome Rent Review Commission (Commission), regarding Rancheros Mobilehome

Park and Lakeview Mobilehome Estates. The Commission denied Rancheros a requested rent increase and granted Lakeview a $10-a-month increase. In a writ of mandate proceeding under Code of Civil Procedure section 1094.5, the trial court found the Commission's decisions were not supported by substantial evidence.[2]

On November 25, 1980, the City of San Marcos adopted a rent control ordinance for its mobilehome parks. The Commission, comprised of the members of the San Marcos City Council, is authorized to review rent increases which are challenged by a written petition of more than 50 percent of the affected park residents.

The San Marcos Mobilehome Park Owners' Association (Owners) challenged the facial constitutional validity of the ordinance,[3] and at a hearing on March 29, 1982, the trial court ordered certain portions of the ordinance stricken, indicated in brackets, as follows: "Investment shall include but not limited to the current market value of the mobilehome park, [actual capital invested and original purchase price]."[4]

The City of San Marcos indicated to the court it had no objection to the deletion of the above phrase. No appeal was taken from the order. ▪ The San Marcos Mobilehome Owners' Council (Residents),[5] who successfully intervened and participated in the hearing, now urge us to reverse the deletion order. Since no appeal was taken from the appealable order (see *Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside*

---

[2] The trial court also reviewed a decision regarding Madrid Manor Mobilehome Park which is not before us on appeal.

[3] The respondents on this appeal include the San Marcos Mobilehome Park Owners' Association, Lakeview Mobilehome Estates, and Rancheros Mobilehome Park, whom we refer to collectively as the "Owners." The proceedings challenging the facial constitutionality of the ordinance, and subsequently the decisions of the Commission, were all part of the same action in superior court. The facial constitutionality proceeding was brought solely by the San Marcos Mobilehome Park Owners' Association against the City of San Marcos and the City Council of San Marcos. Rancheros and Lakeview were added on as plaintiffs in supplemental complaints challenging the Commission's decisions denying their rent increases. The San Marcos Mobilehome Owners' Council, representing the residents, intervened and participated in the facial constitutionality proceeding and in the proceedings thereafter.

[4] There appears to be a grammatical error in the ordinance, which likely should read: "Investment shall include but not *be* limited to the current market value. . . ."

[5] The residents of the mobilehome parks own their mobilehomes and pay rent for the spaces within the park. For the sake of convenience, we will refer to the arguments of the City of San Marcos, et. al., (appellants) and San Marcos Mobilehome Owners' Council (intervenors and appellants) collectively as the "Residents," since their arguments on appeal are essentially the same.

(1984) 157 Cal.App.3d 887, 893 [204 Cal.Rptr. 239]) the order cannot now be reviewed. (Code Civ. Proc., § 906.)[6]

■ We evaluate the ordinance as modified by the deletion. The Owners argue the terms of the ordinance require the Commission to award a rent level which gives a fair return on current market value. The Residents argue the Commission was free to select one or more of numerous standards to determine the rent level.

The ordinance states in pertinent part: ". . . the City Council finds and declares it necessary to protect the mobile home coach owner or occupiers of mobile homes from unreasonable rent increases while at the same time, recognizing the need of the mobile home park owners to receive a fair return on their investments *and* by reasonable rent increases sufficient to cover the increased cost of repairs, maintenance, insurance, upkeep and all other additional amenities.

". . . . . . . . . . . . . . . . . . . . . .

"(d) Investment *shall include but not limited to the* current market value of the mobile home park, [*actual capital invested and original purchase price*].

". . . . . . . . . . . . . . . . . . . . . .

"(h) In evaluating the rent increase proposed or effected by the park owner, the Commission shall consider increased *operating* costs to the owner attributable, including but not limited to increases in utility rates and property taxes, insurance, advertising, governmental assessments, normal repair and maintenance, capital improvements, upgrading and addition of amenities or services as well as a fair rate of return on investment." (Italics in original.)

The ordinance directs the Commission to award a rent level which (1) allows a *fair return on investment, and* (2) *covers increased operating costs.*

---

[6] Although we are not reviewing the trial court's decision, we note it deleted the phrase "actual capital invested and original purchase price" apparently because it did not consider these factors as allowing a fair return on property—i.e. an owner who purchases at lower cost would not be able to charge as much rent as another owner who purchases at higher cost. (For discussion of this issue, see *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 685 [209 Cal.Rptr. 682, 693 P.2d 261].) However, the trial court did not delete the qualification "but not limited to," apparently on the basis that other factors besides current market value could still affect a fair return on investment determination. Since the issue is not before us, we render no opinion as to the facial validity of the San Marcos ordinance as originally enacted.

The meaning of investment *includes* current market value, but is *not limited to* current market value. Thus, the Commission was required to evaluate the current market value, but it was not precluded from considering other factors as well, in order to determine the value of the investment. Moreover, in setting the rent level, it was not limited to only considering a return on investment, but must also consider increased operating costs.

In short, the face of the statute does not bind the Commission to any one formula, but it does instruct the Commission to include current market value and operating costs in whatever standards it uses. We disagree with the Owners' argument to the extent it contends the Commission could *only* base its determination on a return on current market value, and we disagree with the Residents' argument to the extent it claims the Commission could render a decision *without* considering current market value.[7]

As our discussion, *infra,* reveals, the Commission did ultimately consider both current market value and operating costs, and thus it followed the terms of its ordinance.

■ We note it is *not* constitutionally required that the ordinance define a fair return solely in terms of return on current market value. (*Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pp. 679-681.) Rent control agencies are not constitutionally obliged to fix rents by the application of any particular method or formula (*Carson Mobilehome Park Owners' Assn.* v. *City of Carson* (1983) 35 Cal.3d 184, 191 [197 Cal.Rptr. 284, 672 P.2d 1297]), although they must avoid confiscatory results and not indefinitely freeze profits *(Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pp. 681-683).

In any event, after the trial court's deletion order, the Commission focused on current market value in determining the rate of return on the investment and in setting the rent level. In short, the Commission used the standard urged by the Owners. Substantial evidence supports the Commission's findings based on a fair return on current market value, and we need not determine if its decisions could have been upheld as nonconfiscatory under any other standard.

## II

■ The Owners contend the trial court should have reviewed the Commission's decision under the independent judgment test. The trial court

---

[7]The Owners argue a "net operating income maintenance" standard is constitutionally deficient. The ordinance does not limit review to an evaluation of operating expenses, nor do the Commission's final decisions (discussed *infra*), thus we need not address this contention.

stated in its decision that whether it used the independent judgment test or the substantial evidence test, it would grant respondents relief, but it was applying the substantial evidence test.

■ The principles governing the appropriate standard of review are summarized in *Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 395 [188 Cal.Rptr. 891, 657 P.2d 383]: "If the decision of an administrative agency will substantially affect a 'fundamental vested right,' then the trial court must not only examine the administrative record for errors of law, but must also exercise its independent judgment upon the evidence. (*Bixby* v. *Pierno, supra,* 4 Cal.3d 130, 143.) When the administrative decision neither involves nor substantially affects such a right, then the trial court must review the whole administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law. (*Bixby, supra,* at p. 144.) [¶]Subsequently in *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34 [112 Cal.Rptr. 805, 520 P.2d 29], referring to *Bixby,* 'we explained the considerations which counsel in favor of fuller judicial review in cases involving vested, fundamental rights. The essence to be distilled is this: When an administrative decision affects a right which has been *legitimately acquired* or is otherwise "vested," and when that right is of a fundamental nature from the standpoint of its economic aspect or its "effect ... in human terms and the importance ... to the individual in the life situation," then a full and independent *judicial* review of that decision is indicated because "[t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." ([*Bixby*] at p. 144.)' " (Italics in original.)

*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 144, 146 [93 Cal.Rptr. 234, 481 P.2d 242], explains the courts must decide on a case-by-case basis whether an administrative decision substantially affects fundamental vested rights, and there is no fixed formula which guarantees a predictably exact ruling in each case. The essence of the determination is to protect the fundamental rights of the individual from abrogation without judicial, as opposed to administrative, review. *(Ibid.)*[8] In analyzing the fundamental nature of the right, the court manifests slighter sensitivity to the preservation of purely economic privileges. *(Id.* at p. 145.)

---

[8] Decisions of administrative agencies which have been granted limited judicial power by the Constitution are reviewable under the substantial evidence standard, even if a fundamental right is involved. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36 [112 Cal.Rptr. 805, 520 P.2d 29].) There has been no contention that a rent control commission derives judicial powers from the Constitution.

Fundamental rights requiring independent judicial review have been found in such areas as the right to keep a driver's license (*Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at p. 398), to continued unemployment or welfare benefits, and to continue one's trade or profession (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 736-737 [129 Cal.Rptr. 298, 548 P.2d 698], and cases there cited). In contrast, rights found not to be so fundamental as to necessitate the use of the independent judgment test include an application for a zoning variance, obtaining approval of a corporate recapitalization plan, bridge bondholders seeking to prevent construction of a neighboring bridge, and a water company seeking to divert water from a particular river. (*Ibid.*)

■ As explained below, we hold the Owners' proposed rent increases in this case do not involve an administrative decision which substantially affects fundamental rights. The requested rent increases fall into the less sensitive category of the "preservation of purely economic privileges", and do not substantially and fundamentally impact the individual in the manner contemplated by *Bixby* and its progeny. (Cf. *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293, 305 [130 Cal.Rptr. 814] [no fundamental right to release gasoline vapors while dispensing fuel to customers]; *Standard Oil Co.* v. *Feldstein* (1980) 105 Cal.App.3d 590, 604-605 [164 Cal.Rptr. 403] [no fundamental right to operate four rather than three refinery units even though return on investment may be lower].) Thus, a substantial evidence standard is proper when reviewing the decision of a rent control board. (See *Campbell* v. *Residential Rent Stabilization & Arbitration Bd.* (1983) 142 Cal.App.3d 123, 126 [190 Cal.Rptr. 829], reaching this conclusion without discussion.)

The Owners argue under *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 165 [130 Cal.Rptr. 465, 550 P.2d 1001], a park owner has a fundamental right to a just and reasonable return on his property which requires the use of the independent judgment standard. *Birkenfield* v. *City of Berkeley, supra,* 17 Cal.3d at page 165, states a rent control ordinance's provisions are within the proper exercise of a government's police power if they are reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property. In contrast, if it is apparent from the face of the provisions that their effect will be to lower rents more than reasonably required for the ordinance's purposes, they are unconstitutionally confiscatory. (*Ibid.*) The provisions may also be confiscatory if the ultimate result reached when applying them is to lower rents more than reasonably necessary to carry out the governmental purposes. (*Ibid.*)

■ The source of *Birkenfeld's* constitutional analysis is the settled law that "legislation regulating prices or otherwise restricting contractual or property rights is within the police power if its operative provisions are reasonably related to the accomplishment of a legitimate governmental purpose...." *(Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d at p. 158.) If the legislation is not reasonably related to legitimate governmental purposes, then it is unconstitutional since it constitutes a deprivation of property without due process of law. *(Id.* at p. 155.)

■ In short, if a rent control commission renders a decision denying a just and reasonable return on property, the decision involves an unconstitutional deprivation of a property right. ■ However, the possible constitutional invalidity of the administrative decision does *not* mean that every time a rent control board evaluates a particular proposed rent increase, it is deciding an owner's fundamental rights. In *Berlinghieri* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at page 397, our Supreme Court clarified that the analysis used to evaluate the constitutional validity of legislation for equal protection/due process purposes is *not* the same as the analysis used to determine the standard for administrative review purposes. ■■ ■ ■ ■ When determining what rights are fundamental under the *Bixby* rule for administrative review purposes, the court examines a right to see if it is important enough to individuals in their life situations to require independent judicial review and *is more concerned with the personal nature of the interest than with its constitutional basis. (Ibid.)*[9]

In *Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 252-253 [220 Cal.Rptr. 2], the court held there was no fundamental right for administrative review purposes to build a revetment to protect owners' houses. The court also addressed the issue of whether the

---

[9] *Berlinghieri* holds retention of a driver's license constitutes a fundamental right for administrative review purposes, even though the right to drive is *not* a fundamental right under the California Constitution requiring strict scrutiny review for purposes of substantive due process analysis. *(Id.* at pp. 396-398.) Here, a landowner's property right to raise rents is not a "fundamental" right for substantive due process purposes, since it is not subject to the "strict judicial scrutiny test" (requiring the legislation to be related to a compelling state interest and closely tailored to effectuate only that interest). Rather, it is subject to the deferential test of whether the legislation is reasonably related to a legitimate governmental purpose. (See generally *Hernandez* v. *Department of Motor Vehicles* (1981) 30 Cal.3d 70, 78 [177 Cal.Rptr. 566, 634 P.2d 917], and cases there cited.) Although the nonfundamental nature of property rights under substantive due process analysis is not conclusive for administrative review purposes, the characterization does not detract from our conclusion that rent control decisions do not substantially affect fundamental property rights. In contrast, if property rights were considered fundamental under substantive due process analysis, it would be much more likely they would also be fundamental for administrative review purposes.

legislation, or its application, was an unconstitutional taking of property without due process of law—i.e., whether it was a proper exercise of police power by bearing a reasonable relationship to a proper legislative goal. (*Id.* at pp. 254-256.) The court rejected the argument that the existence of this constitutional substantive due process issue established a fundamental right warranting use of the independent judgment standard, noting further that the administrative decision did not deny the owners a right to construct a revetment, but only imposed conditions on the construction. (*Id.* at pp. 254-255; see also *Georgia-Pacific Corp.* v. *California Coastal Com.* (1982) 132 Cal.App.3d 678, 697, 699 [183 Cal.Rptr. 395].)

In short, merely because an administrative decision may involve property rights which are subject to constitutional substantive due process restrictions, it does not necessarily follow that the decision involves a fundamental right in the administrative review context. An inquiry must be made on a case-by-case basis as to whether the property right at issue fundamentally affects the life situation of the individual, or whether it merely impacts an area of economic privilege in a less than fundamental manner.

Here, there is no contention, nor does the evidence suggest, that if the Commission denied the requested rent increases, the park owners would be in such an unfavorable economic position they would go out of business. Thus, the Commission's decision does not substantially affect the property owner's right not to have his property taken away from him. (See *Mobil Oil Corp.* v. *Superior Court, supra,* 59 Cal.App.3d at p. 305 [rule is not one which effectively drives company out of business]; *Standard Oil Co.* v. *Feldstein, supra,* 105 Cal.App.3d at p. 604 [no contention that action will drive company to financial ruin or force facility to operate at loss and close].) Rather, the decision restricts the return he can obtain from his property.

A "just and reasonable" rate of return is one high enough to encourage good management, reward efficiency, discourage the flight of capital, and enable operators to maintain their credit, and which is commensurate with returns in comparable enterprises, but which is not so high as to defeat the purpose of rent control to prevent excessive rents. (*Oceanside Mobilehome Park Owners' Assn.* v. *City of Oceanside, supra,* 157 Cal.App.3d at p. 907.) There is a range of rents which can be charged, all of which could be characterized as allowing a "just and reasonable" return. (See *Hutton Park Gardens* v. *Town Council* (1975) 68 N.J. 543 [350 A.2d 1, 15] [the terms "just and reasonable" and "confiscatory" are not precise formulations]; *Power Comm'n* v. *Pipeline Co.* (1942) 315 U.S. 575, 585 [86 L.Ed. 1037, 1049, 62 S.Ct. 736, 743] [there is a zone of reasonableness which is

higher than a confiscatory rate].) Thus, many decisions by rent control boards will focus on the issue of where the requested increases fall within the range of possible rents — all of which rents would allow the owner a return sufficiently "just and reasonable" as to not be constitutionally confiscatory. That is, the board will consider whether the proposed rent increases are sufficiently justified by increases in the property's value or expenses, so as to outweigh the tenants' need not to suffer higher rents and to warrant a rent in the higher range; or on the other hand, whether any increases in value or expenses are not sufficiently high to support any movement up the scale of rents. ■ Here, there is no suggestion the Commission's decisions disallowing all or part of the proposed rent increases will result in maintaining rents so low as to be unconstitutionally confiscatory. Rather, the record indicates the Commission's decisions merely affect the extent of the owners' ability to earn greater profits on their property.

This case is distinguishable from cases applying the independent judgment standard to administrative decisions which deny a property owner's claim that his right to a certain use of his property was "vested" under the "vested rights" doctrine. *(Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 63-64[227 Cal.Rptr. 667, 720 P.2d 15], and cases there cited.) ■ Under the vested rights doctrine, a property owner acquires a vested right to continue a use actually instituted notwithstanding an intervening change in the law that would otherwise preclude it *(Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 252); or, similarly, the owner acquires a vested right to the use if the government represents the use is legal, and the owner, in reliance thereon, materially changes position *(Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38, 49 [161 Cal.Rptr. 392]). ■ Although the courts apply the independent judgment standard on the basis that the vested rights doctrine derives from the constitutional guarantee that property may not be taken without due process and just compensation *(Halaco Engineering Co.* v. *South Central Coast Regional Com., supra,* 42 Cal.3d at pp. 63-64), vested rights claims are distinguishable from the rights involved here. A landowner with a vested rights claim can be entirely precluded from using his property for a purpose in which he has already invested in reliance on prior governmental acts. (See e.g., *Stanson* v. *San Diego Coast Regional Com., supra,* 101 Cal.App.3d at pp. 41-43 [owner denied permit to use remodeled building as a restaurant, which had already opened].) In contrast, a rent control decision does not interfere with the use of land. It only restricts the escalation of rents, a deprivation not nearly as severe as one which precludes an already established use of land.

■ ■ ■ ■ Moreover, in cases where a use of land is not claimed to be "vested" under the vested rights doctrine, the courts have

found no fundamental vested right to continue a use of land free of regulation, and have applied the substantial evidence test. (See, e.g., *Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at pp. 253-254 [regarding public access restrictions on building of revetment to protect beach houses].)[10]

The trial court correctly applied the substantial evidence test. We review the administrative record to determine whether the agency's decision was supported by substantial evidence. *(Patterson* v. *Central Coast Regional Com.* (1976) 58 Cal.App.3d 833, 842 [130 Cal.Rptr. 169].)

### III-V*

. . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed and the decisions of the Commission are reinstated.

Kremer, P. J., and Todd, J., concurred.

Respondents' petition for review by the Supreme Court was denied September 23, 1987.

---

[10] We note the term "vested" as used in the "vested rights doctrine," and as used in the phrase "fundamental vested rights" for the administrative review standard, does not have the same meaning. In the former context, vested means a right the government is estopped to deny. In the latter context, "vested" means a right already possessed, and the term is subject to the same test of the importance to the individual as is the term "fundamental." (See *Whaler's Village Club* v. *California Coastal Com., supra,* 173 Cal.App.3d at p. 252.)

* See footnote, *ante,* page 1492.