[No. G011143. Fourth Dist., Div. Three. May 29, 1992.]

GOAT HILL TAVERN, Plaintiff and Respondent, v.
CITY OF COSTA MESA, Defendant and Appellant.

1520

## COUNSEL

Thomas Kathe, City Attorney, Adams, Duque & Hazeltine, Richard R. Terzian and Cristina L. Sierra for Defendant and Appellant.

Harper & Burns and Alan R. Burns for Plaintiff and Respondent.

## OPINION

**WALLIN, J.**—Robert Ziemer, owner of the Goat Hill Tavern, was granted a writ of administrative mandamus (Code Civ. Proc., § 1094.5) ordering the City Council of the City of Costa Mesa to set aside its denial of Ziemer's application for renewal of a conditional use permit for the tavern, to recognize that the tavern had a vested right to continue operation, and to renew the conditional use permit. The city appeals, contending the trial court erred in finding the tavern had any vested rights to continue in business which resulted in the trial court erroneously applying the independent judgment standard of review, rather than the substantial evidence test. We affirm.

Goat Hill Tavern[1] is located on Newport Boulevard, a busy arterial street, at a point which will eventually be the terminus of a freeway. The property is zoned commercial and the commercial nature of the area is expected to intensify in the future. An apartment building, in a residential zone, abuts the property behind the tavern's parking lot. The Helm bar is next door.

The city's zoning ordinance requires a conditional use permit for any establishment serving food or beverages within 200 feet of a residential zone. However, Goat Hill Tavern, under different ownership and name, has been in continuous operation in its present location since 1955, before enactment of the current zoning ordinance. The tavern, therefore, existed as a legal nonconforming use. In 1974 a conditional use permit was issued allowing the tavern to add a beer garden.

---

[1] "Goat Hill" was the early name of the area where Goat Hill Tavern is located, prior to the incorporation of the City of Costa Mesa.

Ziemer purchased Goat Hill Tavern in 1984 and invested approximately $1.75 million in its refurbishment. In 1988 he knocked out a wall into an adjoining commercial space, turning it into a game room. He did not obtain building permits or land use approvals. After the fact, he applied for a conditional use permit for the expansion. Conditional use permit No. 88-132 was approved by the planning commission on September 26, 1988.[2] One of the conditions was that approval of the expansion was for a period of six months only. Prior to expiration Goat Hill Tavern could request renewal of the permit.

In September 1989, following citizen complaints of noise from Goat Hill Tavern's parking lot, the city's planning staff discovered the conditional use permit had expired. A request for renewal was made and approved in December for three months.

In March 1990 the city renewed the permit for another three months but added a condition limiting the tavern's hours. Goat Hill Tavern filed suit, and the court stayed enforcement of the hours restriction. The action was dismissed when the three-month period expired.

The city held a public hearing on Goat Hill Tavern's request for a third renewal of the conditional use permit on July 16, 1990. The staff report, accompanied by over 100 pages of documents, was not given to the tavern's attorney until the Friday evening before the Monday hearing. Goat Hill Tavern requested a continuance to adequately respond to the lengthy report. The city council refused unless the tavern agreed to limit its hours of operation in the interim. Ziemer refused; the hearing was held and the conditional use permit was denied.

In Goat Hill Tavern's ensuing second administrative mandamus proceeding, the court concluded the city's refusal to continue the July 16 hearing

---

[2]The term "conditional use permit" is misleading as it connotes the issuance of an actual document setting forth the property owner's use rights and the conditions imposed upon that use. The city's practice, apparently not uncommon, is to not issue an actual physical document when it grants a conditional use permit. Nor does it adopt a resolution approving or denying a conditional use permit. Rather, the city's planning staff submits an applicant's request for approval of a conditionally permitted use to the planning commission along with a staff report explaining the project, recommending approval or denial of the use, and proposing conditions of approval. If, after a public hearing, the planning commission approves of the request, the approval and actual conditions imposed upon the applicant are noted in the minutes of the meeting and written on the staff report. The applicant is then given notice of the planning commission's action. When we refer to Goat Hill Tavern's "conditional use permit" we refer to the approval of its expansion as described in the staff report and the conditions noted on the staff report and in the minutes of the September 26, 1988, planning commission meeting.

violated Ziemer's due process rights. The city was ordered to hold a new hearing on the renewal of the permit. It was held in December 1990 and the tavern's application was again denied.

The following facts regarding Goat Hill Tavern were adduced at the hearing. Tenants of the apartment building abutting the tavern's parking lot and some business owners began complaining about the tavern in the summer of 1989. The complaints largely related to late night noise in the parking lot and trash. In response, conditions were imposed on earlier extensions of the tavern's conditional use permit which required additional security guards, decreased noise levels and increased cleanup. The owner of the apartment building testified that on three occasions after July 1990, people were milling about the tavern parking lot about 2 a.m., honking horns and yelling. At least one of his tenants had moved because of the noise and others were threatening to leave. Several apartment tenants wrote letters complaining of noise and fights in the parking lot, and of individuals vomiting, urinating and defecating on residents' lawns and fences.

Several nearby business owners made similar complaints, stating Goat Hill Tavern was no longer a neighborhood tavern but had become a popular nightclub. The staff report summarized 19 reported police incidents occurring at the tavern between August 1990 and November 1990. They included incidents in the parking lot and complaints the tavern exceeded its capacity and its patrons were drunk in public.

Goat Hill Tavern submitted a petition signed by 1,035 persons, including 248 Costa Mesa residents, supporting its permit renewal application. Declarations from its janitorial company indicated the tavern had expanded its area of cleanup beyond its own parking lot. Numerous letters from Costa Mesa residents, area businesses, and civic and charitable groups supporting the tavern's application were also presented.

Goat Hill Tavern presented evidence suggesting an explanation for the complaints was the large number of homeless and transient persons who frequented the area. A nearby city-owned parking lot was known as a congregating area for homeless people. Additionally, the Helm bar, adjoining the tavern, could be the cause of the complaints. Ziemer was not allowed to cross-examine complaining witnesses as to why they believed Goat Hill Tavern, and not the other possible sources, was responsible for their complaints. Although at the beginning of the hearing the mayor asked each witness to provide such an explanation, no witness did so, and no follow-up questions were asked.

The tavern submitted police reports of incidents at all similar establishments within the area for the previous 90 days. Nineteen incidents were

reported at Goat Hill Tavern. But, of the 18 bars and coffee shops in the vicinity, 10 had a greater number of reported incidents for the same period and only 5 had less than 15 incidents.

Goat Hill Tavern also submitted the declaration of a paralegal who had reviewed the city's conditional use permit file. She found 79 conditional use permits issued between 1974 and 1990 with term limitations which had expired and were not renewed. Many of the businesses were still in operation.

I

Goat Hill Tavern sought a writ of administrative mandamus (Code Civ. Proc., § 1094.5) compelling the city to renew its conditional use permit. The trial court, applying the independent judgment test, concluded the city's decision to deny renewal of the permit was not supported by the evidence and granted the writ. The court specifically concluded that Ziemer had a vested property right and, to terminate the use, the city must establish Goat Hill Tavern was a public nuisance or demonstrate a compelling public necessity. The city appeals, contending the trial court applied an incorrect standard of review. It argues that Ziemer had no fundamental vested right in Goat Hill Tavern and, therefore, the trial court was limited to a determination of whether substantial evidence supported the city's decision.

 The grant or denial of a conditional use permit is an administrative or quasi-judicial act. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 517 [113 Cal.Rptr. 836, 522 P.2d 12]; *Smith* v. *County of Los Angeles* (1989) 211 Cal.App.3d 188, 198 [259 Cal.Rptr. 231].) Judicial review must be in accordance with Code of Civil Procedure section 1094.5.

If an administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 32 [112 Cal.Rptr. 805, 520 P.2d 29]. See Code Civ. Proc., § 1094.5, subd. (c).) On appeal, we consider only whether the trial court's finding is supported by substantial evidence. (*Whaler's Village Club* v. *California Coastal Com.* (1985) 173 Cal.App.3d 240, 251 [220 Cal.Rptr. 2], criticized on other grounds in *Surfside Colony, Ltd.* v. *California Coastal Com.* (1991) 226 Cal.App.3d 1260, 1269-1272 [277 Cal.Rptr. 371].) If the decision does not substantially affect a fundamental vested right, the

trial court considers only whether the findings are supported by substantial evidence in the light of the whole record. (*Strumsky* v. *San Diego County Employees Retirement Assn.*, *supra*, 11 Cal.3d at p. 32.)

The threshold issue on appeal is whether Ziemer had any vested fundamental right to continue operation of the tavern.[3] ■ Preliminarily, we note "[t]he term 'vested' in the sense of 'fundamental vested rights' to determine the scope of judicial review . . . [in an administrative mandamus proceeding] is not synonymous with . . . the 'vested rights' doctrine relating to land use and development." (*Whaler's Village Club* v. *California Coastal Com.*, *supra*, 173 Cal.App.3d at p. 252.) "When an administrative decision affects a right which has been *legitimately acquired* or is otherwise vested, and when that right is of a fundamental nature from the standpoint of its economic aspect or its effect . . . in human terms and the importance . . . to the individual in the life situation, then a full and independent *judicial* review of that decision is indicated because [t]he abrogation of the right is too important to the individual to relegate it to exclusive administrative extinction." (*San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos* (1987) 192 Cal.App.3d 1492, 1499 [238 Cal.Rptr. 290], internal quotation marks omitted.)

"Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. [Citation.] Although no exact formula exists by which to make this determination [citation] courts are less sensitive to the preservation of purely economic interests. [Citation.] In deciding whether a right is 'fundamental' and 'vested,' the issue in each case is whether the ' "affected right is deemed to be of sufficient significance to preclude its extinction or abridgment by a body lacking *judicial* power." [Citation.]' " (*301 Ocean Ave. Corp.* v. *Santa Monica Rent Control Bd.* (1991) 228 Cal.App.3d 1548, 1556 [279 Cal.Rptr. 636].)

---

[3]The original conditional use permit only applied to the expansion. Goat Hill Tavern previously existed as a legal nonconforming use. Had the city denied the conditional use permit when it was first requested in 1988 after construction of the game room expansion, presumably the tavern would have been required to close the game room and revert to its original capacity. One would assume, therefore, that in approving or denying renewal of the conditional use permit, the city only sought to terminate the expanded use. However, the city is emphatic that by denying renewal of the permit it intends to force the tavern out of business. The city, Goat Hill Tavern and the trial court all appeared to operate under the same premise: that the tavern's original rights as a legal nonconforming use and its right to operate in the expanded capacity under the conditional use permit have become inextricably intertwined and denying renewal of the conditional use permit puts the tavern out of business. Because the issue has not been raised by either party, we do not consider whether a different standard of review would apply if the city was only attempting to close the game room as opposed to an entire business which has operated as a legal nonconforming use for over 35 years.

The courts have rarely upheld the application of the independent judgment test to land use decisions. Those cases have typically involved classic vested rights. (See *Halaco Engineering Co.* v. *South Central Coast Regional Com.* (1986) 42 Cal.3d 52 [227 Cal.Rptr. 667, 720 P.2d 15]; *Anderson* v. *City of La Mesa* (1981) 118 Cal.App.3d 657 [173 Cal.Rptr. 572]; *Stanson* v. *San Diego Coast Regional Com.* (1980) 101 Cal.App.3d 38 [161 Cal.Rptr. 392].)

For example, in *Anderson* the city issued the plaintiff a building permit which complied with the standard zoning ordinance requiring a five-foot setback, but not the specific plan requiring a ten-foot setback. In good faith reliance on the permit the plaintiff built her house within seven feet of the lot line. The court concluded once the plaintiff had completed her house in reliance on the permit, her rights vested and the trial court correctly applied its independent judgment in reviewing the city's decision denying a variance from the zoning. (*Anderson* v. *City of La Mesa, supra,* 118 Cal.App.3d at p. 660.)

In *Stanson* the coastal commission told the plaintiff that he did not need a permit to remodel his restaurant. In reliance, he obtained building permits and expended substantial sums of money remodeling his building. The court concluded that under these circumstances the plaintiff had acquired a vested right to construct his building and the trial court should have applied the independent judgment test in reviewing the coastal commission's denial of his subsequent permit application. (*Stanson* v. *San Diego Coast Regional Com., supra,* 101 Cal.App.3d at p. 50.)

The city urges that any rights impacted by its denial of Goat Hill Tavern's renewal application are purely economic interests. Therefore, the rights are not fundamental vested rights. (*Champion Motorcycles, Inc.,* v. *New Motor Vehicle Bd.* (1988) 200 Cal.App.3d 819, 824 [246 Cal.Rptr. 325].) However, a review of cases considering the application of the independent judgment test and the definition of fundamental vested rights demonstrates that the rights affected by the city's refusal to renew Goat Hill Tavern's permit are sufficiently vested and important to preclude their extinction by a nonjudicial body.

In *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos, supra,* 192 Cal.App.3d 1492, a city rent control commission denied the plaintiff property owner's application for a rent increase in a rent controlled building. Affirming the trial court's application of the substantial evidence test, the court found requests for rent increases "fall into the less sensitive category of the 'preservation of purely economic privileges', and do not substantially and fundamentally impact the individual in the manner contemplated by *Bixby* [v. *Pierno* (1971) 4 Cal.3d 130 (93 Cal.Rptr. 234, 481 P.2d 242)] and its progeny." (*San Marcos Mobilehome Park Owners' Assn., supra,*

192 Cal.App.3d at p. 1500.) "Here, there is no contention, nor does the evidence suggest, that if the Commission denied the requested rent increases, the park owners would be in such an unfavorable economic position they would go out of business. Thus, the Commission's decision does not substantially affect the property owner's right not to have his property taken away from him. [Citations.] Rather, the decision restricts the return he can obtain from his property." (*Id.* at p. 1502.)

Similarly, in *Mobil Oil Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 293 [130 Cal.Rptr. 814], the court held the substantial evidence test applied to an administrative decision requiring gas stations to install gasoline vapor recovery systems because it impacted only economic interests. "We are not presented with the enforcement of a rule which effectively drives the Oil Companies out of business. At most it puts an economic burden on them increasing the cost of doing business. In weighing the relative importance to individuals in the life situation, it is manifest the Oil Companies' right to continue releasing gasoline vapors into the atmosphere is neither fundamental nor vested." (*Id.* at p. 305.)

Similarly, in *Standard Oil Co.* v. *Feldstein* (1980) 105 Cal.App.3d 590 [164 Cal.Rptr. 403], the substantial evidence test was applied to an administrative decision. An air pollution control district granted Standard permission to construct a low-sulphur fuel oil facility, subject to the condition that it shut down two of three other refinery units while the new facility was in operation. When Standard proceeded to operate all four units, the district hearing board found it to be in violation of its permit and forced it to shut down the new refinery. The court concluded the action did not impact a fundamental vested right because "[t]here is no contention that Standard will be driven to financial ruin by the action of the District; there is not even a contention that this particular facility will be forced to operate at a loss and close." (*Id.* at p. 604.) The only impact of the decision was reduced profits.

In *San Marcos Mobilehome Park Owners' Assn.* v. *City of San Marcos, supra,* 192 Cal.App.3d 1492, *Standard Oil Co.* v. *Feldstein, supra,* 105 Cal.App.3d 590, and *Mobil Oil Corp.* v. *Superior Court, supra,* 59 Cal.App.3d 293, the courts held the administrative actions implicated purely economic interests because there were no contentions, nor evidence, that the actions would force the companies out of business or cause them to lose their property. The opposite is true here. The avowed purpose and result of the city's decision is to shut down Goat Hill Tavern.

In *301 Ocean Ave. Corp.* v. *Santa Monica Rent Control Bd., supra,* 228 Cal.App.3d 1548, the landowner's rights were found to be fundamental vested rights. The owner of a rent controlled apartment complex with fewer

parking spaces than apartments had historically assigned parking to some tenants but not to all. He also assigned parking to nontenants on occasion. Availability of parking was not part of the lease agreement. The city rent control board made a determination that parking was a base housing amenity and that the apartment complex's parking units were part of the rental unit and subject to the rent control ordinance. Therefore, rent had to be decreased for those units not granted a parking space. In concluding the independent judgment test applied, the court found "the affected right in this case is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body." (*Id.* at p. 1556.) Unlike *San Marcos Mobilehome Park Owners' Assn.,* v. *City of San Marcos, supra,* 192 Cal.App.3d 1492, where there was no interference with the use of land but only a restriction on the escalation of rents, here the city's decision actually interfered with Ziemer's preexisting use of his property.

Goat Hill Tavern has been in operation for over 35 years as a legal nonconforming use. Ziemer invested over $1.75 million in its refurbishment, including substantial exterior facade improvements undertaken at the city's behest. He then sought a conditional use permit to allow the addition of a game room, which was granted on a temporary basis. Now, with the expiration of the permit, the city urges he has lost all right to continue in business.[4]

We cannot conclude on these unique facts that Ziemer's right to continued operation of his business is not a fundamental vested right. This is not, as the city so strongly urges, a "purely economic privilege." It is the right to continue operating an established business in which he has made a substantial investment.

Interference with the right to continue an established business is far more serious than the interference a property owner experiences when denied a conditional use permit in the first instance. Certainly, this right is sufficiently personal, vested and important to preclude its extinction by a nonjudicial body.

While cases applying the independent judgment test in land use matters are few, we uphold its application here because of the unique facts presented.

---

[4]Generally, a nonconforming use has no legal right to expand. (*Sabek, Inc.* v. *County of Sonoma* (1987) 190 Cal.App.3d 163, 167 [235 Cal.Rptr. 350].) Additionally, the courts have upheld the issuance of a conditional use permit allowing the expansion of a nonconforming use on the condition that the entire use be terminated within a specific time period. (*Edmonds* v. *County of Los Angeles* (1953) 40 Cal.2d 642, 653 [255 P.2d 772].) We, however, find it utterly implausible that Ziemer knowingly gave up all rights to continue operating Goat Hill Tavern in exchange for the opportunity to keep his game room expansion open for six months. Nothing in the documents pertaining to the issuance of the conditional use permit in the first instance suggests that Goat Hill Tavern would be forced to cease operating if an extension of the permit were denied.

We might conclude differently were this, as the city attempts to suggest, a simple case of a property owner seeking a conditional use permit to begin a use of property. But it is not. Rather, Goat Hill Tavern is an existing business and a legal nonconforming use.

The circumstances presented are more like the revocation of a conditional use permit than the mere issuance of one. The city has a practice, common in many cities, of issuing limited conditional use permits. When the conditional use permit "expires" the property owner must renew the conditional use permit. At such time, the city argues, the property owner is subject to the same discretionary approval process he or she experienced when the conditional use permit was originally obtained. Renewal is not simply a question of whether the property owner has complied with the conditions of the permit. Rather the city's action on the renewal request can be premised upon any of the discretionary grounds for its issuance in the first instance (Gov. Code, § 65901) because the city views the renewal as a new request for a permit.

Costa Mesa's practice is to do nothing about "expired" conditional use permits and to allow businesses to continue. When a complaint about a business arises, as here, months after the conditional use permit expires, the city demands an application for renewal. In the meantime, the property owner has been continuing to invest in the property and the business, but faces the possible loss of his conditional use permit for reasons other than failure to comply with its original conditions.

■ Denial of an application to renew a permit merits a heightened judicial review. "Once a use permit has been properly issued the power of a municipality to revoke it is limited. [Citation.] Of course, if the permittee does nothing beyond obtaining the permit it may be revoked. [Citation.] Where a permit has been properly obtained and in reliance thereon the permittee has incurred material expense, he acquires a vested property right to the protection of which he is entitled. [Citations.] When a permittee has acquired such a vested right it may be revoked if the permittee fails to comply with reasonable terms or conditions expressed in the permit granted [citations] or if there is a compelling public necessity. [Citations.] [¶] A compelling public necessity warranting the revocation of a use permit for a lawful business may exist where the conduct of that business constitutes a nuisance." (*O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 158 [96 Cal.Rptr. 484]; *Trans-Oceanic Oil Corp.* v. *Santa Barbara* (1948) 85 Cal.App.2d 776 [194 P.2d 148]; see also *Upton* v. *Gray* (1969) 269 Cal.App.2d 352 [74 Cal.Rptr. 783]; *Community Development Com.* v. *City of*

*Fort Bragg* (1988) 204 Cal.App.3d 1124 [251 Cal.Rptr. 709].) By simply denying renewal of its conditional use permit, the city destroyed a business which has operated legally for 35 years. The action implicates a fundamental vested right of the property owner, and the trial court was correct in applying the independent judgment test.[5]

## II

Although the trial court was required to apply the independent judgment test, on appeal we apply the substantial evidence standard. (*Barrie* v. *California Coastal Com.* (1987) 196 Cal.App.3d 8, 14 [241 Cal.Rptr. 477]. See also *Strumsky* v. *San Diego County Employees Retirement Assn., supra,* 11 Cal.3d at p. 32.) ■ Substantial evidence supports the trial court's decision.

The evidence before the trial court is the same evidence which was before the city council at the December 1990 hearing when it made its decision to deny renewal of the conditional use permit. (Code Civ. Proc., § 1094.5, subd. (a).) While the city had evidence of complaints from neighboring residents and businesses, Ziemer also presented a great deal of evidence. Several witnesses wrote or testified favorably to Goat Hill Tavern. Additionally, Ziemer introduced police records showing the number of incidents reported at the tavern were less than at most other bars and coffee shops in the vicinity. There was no showing to distinguish complaints about Goat Hill Tavern from other possible causes, including the Helm bar, which adjoined Goat Hill Tavern, and the homeless who frequent the area.

The city argues that even if it is required to prove Goat Hill Tavern is a public nuisance or there exists a compelling public necessity to terminate its operation, the evidence below supports such a finding. We need not address this claim because it is not properly before us. The city has not yet attempted to obtain a nuisance determination.

---

[5]The city relies heavily on *Smith* v. *County of Los Angeles, supra,* 211 Cal.App.3d 188. In *Smith* the court held the independent judgment test did not apply to judicial review of the county's denial of a conditional use permit for an adult business. The business had been in operation before the county's action, presumably as a nonconforming use. However, there was no suggestion in *Smith* that the adult business had any right to continue in operation as a legal nonconforming use had it not applied for the conditional use permit. Here, had Goat Hill Tavern never built its game room expansion, it would still be operating as a legal nonconforming use. Furthermore, *Smith* involved a new application for a conditional use permit, not a renewal of a conditional use permit. For these reasons we find *Smith* unpersuasive.

The judgment is affirmed.

Sills, P. J., and Crosby, J., concurred.

A petition for a rehearing was denied June 16, 1992, and appellant's petition for review by the Supreme Court was denied August 13, 1992. Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.