Filed 3/12/14

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Yolo)**

----

| | |
|---|---|
| AMERCO REAL ESTATE COMPANY, | C072403 |
| Plaintiff and Appellant, | (Super. Ct. No. CV-PT-11-2672) |
| v. | |
| CITY OF WEST SACRAMENTO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Yolo County, Daniel P. Maguire, Judge. Affirmed.

Law Offices of Jeffrey L. Aran and Jeffrey L. Aran for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Jeffrey A. Mitchell and William T. Chisum for Defendant and Respondent.

Business and Professions Code section 5499 (hereafter, section 5499) "grandfathers" (i.e., legalizes) on-premises business signs that do not conform to a subsequently enacted local sign law as to height or size, if a conforming sign's (1)

visibility or (2) communicative effectiveness, would be materially impaired by special topographic circumstances.

In this administrative mandate action (Code Civ. Proc., §§ 1094.5, 1094.6), we conclude the trial court properly used the substantial evidence test, rather than the independent judgment test, to review an administrative decision concerning these two material impairments.

The trial court concluded that substantial evidence supported the locality's findings that reducing the height of the pole sign at issue from 35 feet to the conforming height of 12 feet (in what is now the locality's "Central Business District") would not materially impair the sign's visibility or communicative effectiveness. Based on this conclusion, the trial court denied the affected business's petition for a writ of administrative mandate. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The affected business is Amerco Real Estate Company, which owns a U-Haul truck rental facility (hereafter, U-Haul) along the eastern portion of West Capitol Avenue in the City of West Sacramento (the City).

The sign at issue (the sign) is a 35-foot-high, freestanding two-pole sign holding three display panels: a panel at the top, reading in large block letters, "U-HAUL"; a middle panel reading, "Custom Hitches"; and a lower panel with a manually changeable reader board concerning hours, sales, goods and services.

U-Haul lawfully installed the sign in 1976.

In 1993, the City enacted an ordinance limiting such pole signs to 12 feet in height in the City's Central Business District, in which U-Haul is located; but the City provided a 15-year amortization period to comply (to May 2008).

2

After providing extensive notice, offering height compromises above 12 feet, and engaging in several attempts to resolve the issue of the noncompliant sign, the City brought an administrative nuisance action against U-Haul (under the sign ordinance) to reduce the sign's height to 12 feet with a maximum of 112 square feet of freestanding sign space.

In August 2011, an administrative hearing officer found in the City's favor along these lines. And the City's Board of Appeals, after a hearing in October 2011, rejected U-Haul's appeal that the sign was entitled to remain pursuant to section 5499, and affirmed the hearing officer's decision.

U-Haul then unsuccessfully petitioned the trial court for a writ of administrative mandate to overturn the City's decision. (Code Civ. Proc., §§ 1094.5, 1094.6.)

This appeal by U-Haul ensued.

We will set forth additional facts in discussing the issues on appeal.

## ISSUES ON APPEAL

The statute at the center of this appeal is section 5499, which provides, "Regardless of any other provision of this chapter or other law, no city or county shall require the removal of any on-premises advertising display on the basis of its height or size by requiring conformance with any ordinance or regulation introduced or adopted on or after March 12, 1983, if special topographic circumstances would result in a material impairment of visibility of the display or the owner's or user's ability to adequately and effectively continue to communicate with the public through the use of the display. Under these circumstances, the owner or user may maintain the advertising display at the business premises and at a location necessary for continued public visibility at the height or size at which the display was previously erected and, in doing so, the owner or user is in conformance."

The several issues U-Haul raises on appeal reduce to two basic issues: (1) Did the trial court properly use the substantial evidence test rather than the independent judgment test to review the City's decision under section 5499? and (2) On appellate court review, is there substantial evidence to support the relevant decision? We conclude the trial court properly applied the substantial evidence test as the standard of review, and that substantial evidence supports the relevant decision—i.e., the City's decision.

## DISCUSSION

### I. The Trial Court Properly Used the Substantial Evidence Test to Review the City's Decision Under Section 5499

As noted, the City rejected U-Haul's administrative appeal that it (U-Haul) was entitled to keep its 35-foot-high sign pursuant to section 5499, and U-Haul petitioned the trial court for administrative mandate to overturn the City's decision. As also noted, section 5499 grandfathers (i.e., legalizes) on-premises business signs that do not conform to a subsequently enacted local sign law as to height or size, if a conforming sign's (1) visibility or (2) communicative effectiveness, would be materially impaired by special topographic circumstances.

In reviewing the evidentiary sufficiency of an administrative agency's decision—if the decision affects a fundamental vested right—the trial court must exercise its independent judgment on the evidence; the trial court must weigh the evidence and determine whether the administrative findings are supported by the weight of the evidence. This is the independent judgment test. This test is required because the importance of the right affected requires independent *judicial* review. On appeal, the appellate court considers only whether the trial court's finding is supported by substantial evidence. (*E.W.A.P., Inc. v. City of Los Angeles* (1997) 56 Cal.App.4th 310, 325 (*E.W.A.P.*); Code Civ. Proc., §§ 1094.5, subd. (c), 1094.6.)

4

If, however, the administrative decision does not substantially affect a fundamental vested right, the trial court considers only whether the administrative findings are supported by substantial evidence in light of the whole record—this is the substantial evidence test; and the appellate court on appeal performs the same review as the trial court. (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525-1526 (*Goat Hill*); *Miller v. Board of Supervisors* (1981) 122 Cal.App.3d 539, 543 fn. 3 (*Miller*); Code Civ. Proc., §§ 1094.5, subd. (c), 1094.6.)

The threshold issue on appeal is whether the City's decision—that section 5499 does not allow U-Haul to keep its 35-foot-high sign, and U-Haul's sign must not exceed 12 feet in height—implicated a fundamental vested right that necessitated the trial court's independent judgment review.

A right may be deemed fundamental "on either or both of two bases: (1) the character and quality of its economic aspect; (2) the character and quality of its human aspect." (*Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 780.)

" ' "Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. [Citation.] Although no exact formula exists by which to make this determination [citation] courts are less sensitive to the preservation of purely economic interests. [Citation.] In deciding whether a right is 'fundamental' and 'vested,' the issue in each case is whether the ' "affected right is deemed to be of sufficient significance to preclude its extinction or abridgment by a body lacking *judicial* power." ' " ' " (*Metropolitan Outdoor Advertising Corp. v. City of Santa Ana* (1994) 23 Cal.App.4th 1401, 1403-1404 (*Metropolitan Outdoor*), quoting *Goat Hill*, *supra*, 6 Cal.App.4th at p. 1526.)

The term "vested" in the sense of "fundamental vested rights" in an administrative mandate proceeding is not synonymous with the "vested rights" doctrine relating to land

5

use development.  (*Goat Hill*, *supra*, 6 Cal.App.4th at p. 1526.)  Courts rarely uphold the application of the independent judgment test to land use decisions.  (*Id.* at p. 1527.)  Cases upholding such application typically involve "classic vested rights"—i.e., a vested right to develop property in a particular way.  (See *ibid.* [and cases cited therein].)

The substantial evidence test has been applied to review administrative decisions that restrict a property owner's return on his property, or which increase the cost of doing business, or reduce profits, because such decisions impact mere economic interests rather than fundamental vested rights.  (*E.W.A.P., supra*, 56 Cal.App.4th at pp. 325-326 [and cases cited therein].)

In contrast, the independent judgment test is applied to review administrative decisions that will drive an owner out of business or significantly injure the business's ability to function.  (*E.W.A.P.*, *supra*, 56 Cal.App.4th at p. 326; *Metropolitan Outdoor*, *supra*, 23 Cal.App.4th at p. 1404.)

For example, the independent judgment test was applied, in *Goat Hill*, to review a city's denial of a permit renewal, because the city's decision would have resulted in the loss of the owner's 35-year-old tavern, a business the owner had recently spent $1.75 million to refurbish, including refurbishments made at the city's request.  (*Goat Hill*, *supra*, 6 Cal.App.4th at pp. 1529, 1530.)  In contrast, the substantial evidence test was applied, in *E.W.A.P.*, to review a city's zoning-based decision to reduce the business hours of an adult bookstore from 24 hours a day, to 9:00 a.m. to 10:00 p.m., in line with the small business neighborhood of the bookstore.  The *E.W.A.P.* court found "that the impact of the hours restrictions, if any, on [the bookstore's] business [was] purely economic . . . ."  (*E.W.A.P., supra*, 56 Cal.App.4th at p. 327; see *id.* at pp. 314, 316.)

Applying these legal principles here, we conclude the trial court properly used the substantial evidence test in reviewing the City's decision that U-Haul was not entitled to

keep its 35-foot sign pursuant to section 5499, and that an on-premises business sign could be no taller than 12 feet.

There is no assertion that the sign's reduction "would destroy or even significantly injure" U-Haul's business. (*Metropolitan Outdoor*, *supra*, 23 Cal.App.4th at p. 1404.) The impact of the sign reduction, if any, on U-Haul's business "is purely economic." (*E.W.A.P.*, *supra*, 56 Cal.App.4th at p. 327.) The City's decision is an aesthetic-based land use decision that does not involve a "classic vested right[]" to develop or use property in a particular way. (*Goat Hill*, *supra*, 6 Cal.App.4th at p. 1527.) In short, while the City's decision leveled U-Haul's 35-foot business sign, it did not level U-Haul's business.

U-Haul counters that the independent judgment test applies for two reasons. We are not persuaded.

First, U-Haul claims the appellate court in *Denny's, Inc. v. City of Agoura Hills* (1997) 56 Cal.App.4th 1312 (*Denny's*) "implicitly approved independent review."

*Denny's* involved a city's attempt to reduce the height of freestanding pole signs of 11 businesses (mostly, fast-food restaurants and gas stations) along a freeway corridor that encompassed an on/off-ramp in the city. (*Denny's*, *supra*, 56 Cal.App.4th at pp. 1316-1318, 1323.) The appellate court in *Denny's* did not determine the proper standard of review for a trial court to use in reviewing an administrative decision under section 5499, because the appellate court reviewed a trial court judgment granting declaratory and injunctive relief in a bench trial, rather than a trial court judgment reviewing an administrative decision. (*Id.* at pp. 1316-1318, 1327-1328.) The *Denny's* court merely concluded that substantial evidence supported the trial court's bench trial finding under section 5499 that the reduced-height conforming signs there would be materially less visible or less effective in communicating to the public, a public which largely comprised freeway motorists. (*Id.* at pp. 1327-1328.)

7

U-Haul claims *Denny's* "implicitly approved independent review" because the appellate court there noted that the trial court had personally toured the freeway corridor, and further noted that "[i]t is settled 'that a view of the scene by the trial judge is independent evidence on which a finding may be made and sustained.' " (*Denny's*, *supra*, 56 Cal.App.4th at pp. 1327-1328.) In this claim, U-Haul has confused "evidence" with the "standard of review for considering the evidence." While the trial court in the *Denny's* bench trial did admit into evidence its own view of the scene, this does not establish which standard of review a trial court is to use in considering the evidentiary basis of an administrative decision under section 5499—independent judgment or substantial evidence. For example, the trial court in the case before us properly viewed the scene as well (see fn. 1, *post*, p. 9) but nevertheless properly applied the substantial evidence test as the standard of review under section 5499 in reviewing the City's administrative decision.

And second, U-Haul notes, in generalities, that signage rights constitute fundamental speech and property rights. While the right to advertise has been recognized as a property right, and may represent the exercise of free speech, the government has the right to reasonably regulate on-premises business signs under the police power. (*Carlin v. City of Palm Springs* (1971) 14 Cal.App.3d 706, 712-713). Here, the City has regulated the height of U-Haul's sign to enhance the aesthetic atmosphere of the City's Central Business District, without depriving U-Haul of its right to conduct a business, to use its business sign to conduct that business, or to make a reasonable use of its land. (See *ibid.*) This is reasonable regulation that does not impinge upon property rights or free speech rights.

We conclude the trial court properly used the substantial evidence test to review the City's decision here.

## II.  Substantial Evidence Supports the City's Decision

Having concluded that the substantial evidence test is the proper standard of review here, we now examine whether substantial evidence supports the City's decision that U-Haul was not entitled to keep its 35-foot pole sign pursuant to section 5499 and had to abide by the 12-foot height limit.  (See *Miller*, *supra*, 122 Cal.App.3d at p. 543, fn. 3 [when a trial court reviews an administrative decision using the substantial evidence test, the trial court and the appellate court occupy essentially identical positions regarding whether the administrative decision is supported by substantial evidence].)[1]

Section 5499 states, as pertinent, "Regardless of any . . . other law, no city or county shall require the removal of any on-premises advertising display on the basis of its height or size by requiring conformance with any ordinance or regulation introduced or adopted on or after March 12, 1983, if special topographic circumstances would result in a material impairment of [(1)] [the] visibility of the display or [(2)] the owner's or user's ability to adequately and effectively continue to communicate with the public through the use of the display."

Substantial evidence is defined as evidence " ' " 'reasonable in nature, credible and of solid value' " ' " and evidence that " ' "a reasonable mind might accept as adequate to support a conclusion." ' " (*County of San Diego v. Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 555.)  Under the substantial evidence standard of review, an appellate court, like the trial court, may not reweigh the evidence, and is bound to consider the facts in the light most favorable to the administrative decision,

---

[1] We note that the trial court here, at U-Haul's request, also properly supplemented the administrative record with its own site inspection.  (See *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 532; see also *No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 79, fn. 6 [in an administrative mandate action, the trial court reviews the administrative record but can receive additional evidence if that evidence was genuinely unavailable at the time of the administrative hearing].)

giving that decision every reasonable inference and resolving all conflicts in the decision's favor.  (See *Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 758.)

## A.  *Material Impairment of Visibility*

At the administrative appeal hearing, U-Haul presented significant evidence, from an expert and from photographs, that a conforming sign would be materially less visible to westbound traffic on West Capitol Avenue (coming from or crossing the major arterial, Jefferson Boulevard).  The expert concluded that, from this westbound direction, the visibility and readability of the "U-HAUL" panel of a conforming sign would be materially impaired, and the "Custom Hitches" panel and the reader board panel would effectively be obliterated from view.

It must be noted, though, that some of this visibility loss from the westbound direction stems from U-Haul's *singular* existing sign of 35 feet towering above the *almost all now-conforming* signs in the vicinity that are only 12 feet in maximum height.  (The administrative record reveals that most of the other properties on West Capitol Avenue brought their signs into conformance voluntarily prior to the compliance deadline.)  Against this backdrop, a backdrop that has taken many years to develop, there arguably would be a certain incongruity in concluding that the City's finding of no material impairment of visibility lacks sufficiency; such a conclusion effectively would reward the lone nonconformer at the expense of almost all who did conform.

More importantly, photographic evidence showed that the three sign panels comprising U-Haul's existing sign are not much visible to eastbound traffic on West Capitol Avenue (coming from or crossing the major arterial, Harbor Boulevard), because of the tree canopy in West Capitol Avenue's landscaped median; and that a lower conforming sign would be more visible.

Furthermore, evidence showed that the topography is flat; that all or nearly all nearby businesses, as noted, have conforming signs (not taller than 12 feet); that the West

10

Capitol Avenue speed limit at and near the U-Haul site is relatively slow (35 miles per hour); that U-Haul's customer base is generally local (rather than, as in *Denny's*, traveling motorists looking for food or gas from a freeway); and that U-Haul's rental trucks parked on the site provide significant advertising themselves. Each of these factors supports a determination that a conforming sign would not be *materially* less visible.

Finally, there is the evidence of the trial court's site inspection.

We conclude there is substantial evidence supporting the City's decision that a conforming sign would not be materially less visible.

### B. Material Impairment of Adequate and Effective Communication

This prong of section 5499 focuses on the " 'communicative quality of the sign,' " rather than its mere visibility. (*Denny's*, *supra*, 56 Cal.App.4th at p. 1319.)

As noted, almost all other businesses in the vicinity of U-Haul have conforming signs. The trial court concluded, "The record indicates that many other businesses in the vicinity have conforming signs, and there is substantial evidence that [U-Haul], like these other businesses, could adequately and effectively communicate with a conforming sign. Certainly, a 35-foot sign is more eye-catching than a [significantly smaller] sign, but Section 5499 only protects the ability to 'adequately and effectively' communicate, not the ability to communicate using a sign of optimal commercial height." This statement by the trial court was made after its own site inspection on July 5, 2012. In addition, the Board of Appeals' decision notes that "The U-Haul property is not subject to any different physical conditions than other properties on West Capitol Avenue, most of whom brought their signs into conformance voluntar[il]y prior to the compliance deadline. [¶] . . . [¶] Numerous other businesses on West Capitol Avenue, including those on the same block and side of the street, have compliant signs. U-Haul has not presented any evidence to suggest that its situation differs from these other properties that

11

have compliant signs." Finally, the photographs submitted by U-Haul in support of their expert's opinion also show clearly the conforming signs of what appear to be ongoing businesses up and down West Capitol Avenue.

As also noted, a conforming sign can provide U-Haul up to 112 square feet of sign space spread over two freestanding signs. And U-Haul's rental trucks themselves, legally parked on the site, effectively communicate the U-Haul brand and services available.

Long ago, before Interstate 80's Sacramento business segment was built, West Capitol Avenue constituted the highway through West Sacramento. Those days are gone. Today, as the record shows, West Capitol Avenue constitutes West Sacramento's downtown in the vicinity of the U-Haul site, and this arterial is transitioning from an auto-oriented boulevard to a pedestrian-oriented street. In the end, then, it is a sign of the times that U-Haul's 35-foot-high freestanding pole sign is no longer a sign for the times.

We conclude there is substantial evidence supporting the City's decision that a conforming sign would not be a materially less adequate or effective communication.[2]

---

[2] To the extent that U-Haul faults the specificity of the trial court's findings, the trial court applied the substantial evidence standard of review (rather than its independent judgment); in any event, U-Haul has waived this claim by failing to request a statement of decision. (Code Civ. Proc., § 632 [absent timely request by a party, written findings of fact and conclusions of law are not required].) To the extent that U-Haul faults the specificity of the City's administrative findings, U-Haul has forfeited that claim by failing to provide a separate heading for it in its appellate briefing. (Cal. Rules of Court, rule 8.204(a)(1)(B).)

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)


                                                                BUTZ , J.


We concur:


BLEASE , Acting P. J.


MURRAY , J.