[No. G038435. Fourth Dist., Div. Three. Dec. 17, 2008.]

THE TERMO COMPANY, Plaintiff and Appellant, v.
BRIDGETT LUTHER, as Director, etc., et al., Defendants and Respondents;
HUNT PETROLEUM (AEC), INC., Real Party in Interest and Respondent.

ANGUS PETROLEUM CORPORATION, Plaintiff and Appellant, v.
BRIDGETT LUTHER, as Director, etc., et al., Defendants and Respondents;
HUNT PETROLEUM (AEC), INC., Real Party in Interest and Respondent.

COUNSEL

Law Offices of Gary E. Shoffner, Gary E. Shoffner; Bright and Brown and John Quirk for Plaintiff and Appellant The Termo Company.

Mahaffey and Associates and Douglas L. Mahaffey for Plaintiff and Appellant Angus Petroleum Corporation.

Edmund G. Brown, Jr., Attorney General, Tom Greene, Chief Assistant Attorney General, J. Matthew Rodriquez, Assistant Attorney General, and Alan V. Hager, Deputy Attorney General, for Defendants and Respondents.

Musick, Peeler & Garrett, David A. Ossentjuk and Michael W. Brown for Real Party in Interest and Respondent.

OPINION

MOORE, J.—The Director of Conservation (Director) (Pub. Resources Code, § 3003) affirmed an administrative order of the State Oil and Gas Supervisor (Supervisor) (Pub. Resources Code, § 3004) directing the plugging and abandonment of 28 oil wells. The Termo Company (Termo) and Angus Petroleum Corporation (Angus) filed petitions for administrative mandamus seeking to overturn the Director's decision of affirmance and the underlying administrative order. The trial court denied the petitions and Termo and Angus now appeal from the trial court judgment.

Termo and Angus list many reasons why they believe the trial court, as well as the Director, erred. We need address only one of their points. They assert that the trial court erred in applying the substantial evidence standard of review. We agree.

In the context before us, the right to continue to operate existing oil wells and to extract oil is a fundamental right, of particular importance in the current economic climate. Here, the fundamental right is also a vested right, given the number of years the wells have been either in operation or in idle status (Pub. Resources Code, § 3008, subd. (d)). When the wells were ordered plugged and abandoned, such that the right to extract oil from them was terminated, that fundamental vested right was affected. Ordinarily, when a fundamental vested right is at issue, and a writ proceeding is commenced,

Code of Civil Procedure section 1094.5 provides that an independent judgment standard of review shall be applied. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 816, fn. 8 [85 Cal.Rptr.2d 696, 977 P.2d 693] (*Fukuda*).) However, there is an exception to this general rule. As *Tex-Cal Land Management, Inc. v. Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335 [156 Cal.Rptr. 1, 595 P.2d 579] (*Tex-Cal*) teaches us, the Legislature may mandate that a substantial evidence standard of review shall be applied in a particular context instead, provided it also ensures that certain due process safeguards are met. Although Public Resources Code section 3355 sets forth a standard of review to be applied with respect to a decision of the Director, it does not clearly express a substantial evidence standard. Furthermore, the requisite due process safeguards are lacking. Consequently, the trial court should have applied the independent judgment standard of review.

We reverse the judgment and remand the matter to the trial court with directions to reconsider the matter under the independent judgment standard of review. In addition, we deny the motion to dismiss Angus's appeal and we deny Angus's request for judicial notice.

# I

## FACTS

### A. *ADMINISTRATIVE ORDER AND DECISION*

#### (1) *Supervisor's Order*

On July 19, 2005, the Supervisor, on behalf of the Department of Conservation's (Pub. Resources Code, § 3001) Division of Oil, Gas, and Geothermal Resources (Division) (Pub. Resources Code, § 3002), issued order No. 976 (the Order) pertaining to 28 unabandoned wells comprising the "Springfield Unit," located in Huntington Beach, California. The following information is taken from the Order.

Hunt Petroleum (AEC), Inc. (Hunt), and Angus each own one-half interests in the Springfield Unit and Angus was the original unit operator. There has been no production from any of the wells since August 1998. Angus wants to resume production, but Hunt does not.[1]

Termo acquired all of the stock of Angus in 1995, and then provided a blanket bond for the wells. The Supervisor then viewed Termo as the operator of the wells under Public Resources Code section 3202.

---

[1] On June 30, 2005, Hunt filed a complaint for declaratory and other relief against Angus. (*Hunt Petroleum (AEC), Inc. v. Angus Petroleum Corp.* (Super. Ct. Orange County, No. 05CC00140).) Hunt sought, inter alia, a declaration that the Springfield Unit had terminated and that Angus was required to perform an abandonment of operations.

Angus did not remain a Termo subsidiary, however. In 2004, Termo sold all of the Angus stock to South Coast Oil Corporation (South Coast). However, neither Termo nor South Coast filed a report of property/well transfer or acquisition with the Division, and South Coast provided neither a bond nor a designation of agent. Consequently, the Supervisor continues to recognize Termo as the operator of the wells.

The Order stated: "The Supervisor has concluded that the Unit wells have no potential for future commercial production and as idle wells pose a threat to public health and safety and natural resources. This unsatisfactory state appears to be the consequence of the impasse between the two working interest owners in the Unit, Hunt and Angus (as now owned by South Coast), regarding the propriety of attempting to resume unit production operations. . . . This impasse now has taken the form of litigation brought by Hunt against Angus to terminate the Unit so that the wells can be plugged and abandoned. . . . [¶] The Supervisor agrees with Hunt's assessment of the Unit wells' potential and disagrees with Angus' assessment and has determined that the state of affairs surrounding operations, or rather the absence of operations, in the Unit . . . constitutes credible evidence of desertion of all Unit wells under Section 3237(a)(2) of the [Public Resources Code], warranting the plugging and abandonment of all Unit wells. The failure of South Coast to comply with Section 3202's bonding requirement, causing a failure to complete the operator transfer from Termo to South Coast, constitutes a rebuttable presumption of desertion of all Unit wells under Section 3237(a)(3)(E) of the [Public Resources Code], warranting the plugging and abandonment of all Unit wells. The Supervisor also has determined that all Unit wells should be plugged and abandoned to protect public health and safety and natural resources."

In conclusion, the Supervisor ordered that all of the wells be plugged and abandoned and that all production facilities be removed, citing Public Resources Code sections 3208, and 3228 through 3230, and certain regulations. The Order stated that the implementation of its terms was the responsibility of Termo, as the operator of the wells, but that Angus and/or Hunt were at liberty to undertake the plugging, abandonment, and facilities removal. The Order also provided that if the specified work had not been undertaken within the stated timeframe, the Supervisor would contract for the work and recover the costs from Termo's blanket bond, and, furthermore, that to the extent the costs were not satisfied by the blanket bond, the unrecovered costs would constitute a lien against the real or personal property of Termo.

### (2) *Director's Decision*

South Coast, on behalf of Angus, and Termo appealed the Order to the Director. In his November 16, 2005 decision (the Decision), the Director affirmed the Order. The Decision stated that the wells were deserted, within the meaning of Public Resources Code section 3237, because (1) there had been no production for seven years and no attempt at production; (2) Angus and Hunt were at a stalemate concerning future operations; and (3) the geology was "not conducive to a contained flood operation." It also said that a rebuttable presumption of desertion had arisen under Public Resources Code section 3237, subdivision (a)(3)(E), since neither Angus nor South Coast had posted an indemnity bond as required by Public Resources Code section 3202.

## B. *COURT PROCEEDINGS*

### (1) *Petitions for Administrative Mandamus*

Termo filed a petition for administrative mandamus in the superior court, seeking to set aside the Decision. It contended that the Director had acted in excess of his jurisdiction and that the Decision was unreasonable and unsupported by the evidence. Termo also filed an amended petition and complaint for declaratory relief. It sought a judicial declaration concerning (1) whether it had ever been an operator of the wells; (2) whether it had, since the date it sold its interest in Angus, any obligation to maintain a performance bond; (3) the respective rights and obligations of the parties pertaining to the plugging and abandonment of the wells; (4) the respective rights and obligations of the parties with respect to the satisfaction of the costs of compliance with the Order; and (5) the party whose assets could be subjected to a lien with respect to those costs.

Angus also filed a petition for administrative mandamus to challenge the Decision. Angus joined in Termo's arguments and made additional arguments as well. The two petitions were consolidated. The court denied both petitions, dismissed Termo's complaint for declaratory relief, and entered judgment accordingly.

### (2) *Appellate Filings*

Angus filed a petition for a writ of supersedeas and a request for a temporary stay of the Order and the Decision. Termo joined in the petition. This court denied the petition and the request for stay.

Termo and Angus also filed notices of appeal from the judgment and from an order denying a request for a statement of decision. The Director, the Supervisor and the Division (collectively "the Director" where the context requires), jointly, and Hunt have filed briefs in support of the judgment, as well as the Order and the Decision. We turn now to the appeals.

## II

## DISCUSSION

### A. *PRELIMINARY MATTERS*

There are several miscellaneous items pending before this court, i.e., a motion to dismiss, a request for judicial notice, and objections to a party's appendix. We address these matters in turn.

### (1) *Motion to Dismiss*

Two notices of appeal have been filed in this matter. The first was filed on March 26, 2007, by Termo. The notice of appeal states that the appeal is taken from a judgment entered on January 17, 2007, and from a postjudgment order denying Termo's request for a statement of decision, and that the notice of entry of judgment was served on January 25, 2007. The second notice of appeal was filed on March 28, 2007, by Angus. It states that the appeal is taken from the January 17, 2007 judgment, and from a postjudgment order denying Termo's request for a statement of decision. The second notice of appeal also states that notice of entry of judgment was served on January 25, 2007, and that the appeal is filed pursuant to California Rules of Court, rule 8.108(e).

The first notice of appeal was filed within 60 days after notice of entry of judgment was served on Termo, and is thus timely under California Rules of Court, rule 8.104(a)(2). The second notice of appeal was not filed within that 60-day period. For this reason, Hunt has filed a motion to dismiss the second appeal as untimely filed. The Director has joined in Hunt's motion to dismiss.

Angus has filed an opposition to the motion. In its opposition, Angus argues that the appeal is timely pursuant to California Rules of Court, rule 8.108(e)(1), as in effect in 2007.[2] That rule states: "If an appellant timely appeals from a judgment or appealable order, the time for any other party to

---

[2] All subsequent references to California Rules of Court, rule 8.108(e) will be to the version in effect in 2007. See now California Rules of Court, rule 8.108(f)(1).

appeal from the same judgment or order is extended until 20 days after the superior court clerk mails notification of the first appeal."

Hunt contends that California Rules of Court, rule 8.108(e)(1) is inapplicable, for two reasons. First, Hunt says the rule applies only to cross-appeals and Angus did not file a cross-appeal. Second, Hunt asserts that the rule applies only when the party seeking to utilize the 20-day extension period is adverse to the first party to file an appeal. We disagree.

 Although the topic heading to California Rules of Court, rule 8.108(e) reads "Cross-appeal," as Angus points out, "[b]y definition, a cross-appeal is any appeal filed after the first appeal [citation], and [the] rule . . . does not differentiate between cross-appeals which are protective and those which are independent." (*Life v. County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1297–1298 [267 Cal.Rptr. 557], fn. omitted.) Moreover, "[t]he usual rules of statutory construction are applicable to the interpretation of the California Rules of Court. [Citation.]" (*Id.* at p. 1296.) " ' "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." [Citation.]' [Citation.] Under the guise of construction, the court will not rewrite a law and will not give the words an effect different from the plain and direct import of the terms used. [Citation.]" (*Ibid.*) Here, the text of rule 8.108(e)(1) contains no limitation of the type asserted by Hunt. It requires neither that an appeal be denominated a "cross-appeal" nor that the second party to file an appeal be adverse to the first party to do so, in order for the 20-day extension period to apply.

In this case, Termo filed a timely appeal from a judgment and an order and, two days thereafter, Angus filed an appeal from the same judgment and order. The appeal of Angus is timely filed under California Rules of Court, rule 8.108(e)(1). The motion to dismiss is denied.

### (2) *Request for Judicial Notice and Objections to Appendix*

On August 22, 2007, Angus filed a request that this court take judicial notice of 12 designated documents. On that same date, Angus filed an appendix. The third through 14th exhibits attached to that appendix are the same as the 12 documents attached to the request for judicial notice. Hunt filed an opposition to the request for judicial notice, and objections to the third through 14th exhibits attached to Angus's appendix. Angus thereafter lodged certified copies of most of the documents that are the subject of the request for judicial notice.[3]

---

[3] There is no certified copy of the fifth document.

The items at issue include certain city council meeting minutes, a zone change ordinance, a conditional use permit, a motion for summary judgment filed in unrelated litigation, certain designations of agents, a certificate of resolution of the board of directors of Termo, a report of well transfer, a blanket bond, a certificate of deposit, and certain agreements to become parties to a unit agreement. Hunt represents that none of these documents were presented to either the administrative hearing officer or the trial court. Angus states that the materials were "referenced in the proceedings below . . . , either directly in footnotes or passing references, or indirectly by implication," but were "not directly provided." Hunt also notes that six of the documents are dated after the date of the administrative proceedings at issue here.

■ We do not take judicial notice of documents that were not provided to the trial court. (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1450 [34 Cal.Rptr.3d 383].) Consequently, we deny the request for judicial notice.

■ In addition, we treat Hunt's objections to the appendix as a motion to strike. An appellant's appendix may only include copies of documents that are contained in the superior court file. (Cal. Rules of Court, rule 8.124(g).) Therefore, we strike the third through 14th exhibits attached to Angus's appendix. (Cal. Rules of Court, rule 8.124(g) [court may sanction party for filing noncompliant appendix].)

## B. STANDARD OF REVIEW

### (1) Introduction

The trial court applied a substantial evidence standard of review. Both Angus and Termo contend the trial court erred in so doing. They argue that because they have fundamental vested rights at stake, the trial court should have applied the independent judgment standard of review. We agree, for reasons we shall show.

### (2) Code of Civil Procedure Section 1094.5

#### (a) General rule

■ Public Resources Code section 3354 permits the review of a decision of the Director through a writ of administrative mandamus proceeding. Code of Civil Procedure "[s]ection 1094.5 sets out the procedure for obtaining judicial review of a final administrative determination by writ of mandate.

Two subdivisions of section 1094.5 are relevant here. Subdivision (b) provides that '[t]he inquiry in such a case shall extend to the questions whether the [agency] proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Fukuda, supra,* 20 Cal.4th at p. 810.)

"Subdivision (c) of [Code of Civil Procedure] section 1094.5 provides in full: 'Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.' " (*Fukuda, supra,* 20 Cal.4th at pp. 810–811.) However, Code of Civil Procedure "[s]ection 1094.5 does not, on its face, specify which cases are subject to independent judgment review." (*Fukuda, supra,* 20 Cal.4th at p. 811.)

■ When the Legislature has not specified the standard of review that applies in a particular instance and "a trial court reviews a final administrative decision that substantially affects a fundamental vested right, the court 'not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence . . . .' [Citation.] By contrast, . . . '[i]f the administrative decision does not involve, or substantially affect, any fundamental vested right, the trial court must . . . review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law . . . .' [Citation.]" (*Fukuda, supra,* 20 Cal.4th at p. 816, fn. 8.)

As our Supreme Court has stated, where fundamental vested rights are at stake, "independent judgment review is necessary to protect individual liberty: 'At a time in this technocratic society when the individual faces ever greater danger from the dominance of government and other institutions wielding governmental power, we hesitate to strip him of a recognized protection against the overreaching of the state. The loss of judicial review of a ruling of an administrative agency that abrogates a fundamental vested right would mark a sorry retreat from bulwarks laboriously built. Such an elimination would . . . destroy a bed-rock procedural protection against the exertion of arbitrary power.' [Citation.]" (*Fukuda, supra,* 20 Cal.4th at pp. 816–817, fn. 8.)

(b) *Fundamental vested right*

■ Angus and Termo argue that the independent judgment standard of review applies here because a fundamental vested right is at issue. " 'Whether an administrative decision substantially affects a fundamental vest right must be decided on a case-by-case basis. [Citation.]' " (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1526 [8 Cal.Rptr.2d 385] (*Goat Hill Tavern*).) In making that determination in this case, *Goat Hill Tavern* provides guidance.

In *Goat Hill Tavern, supra,* 6 Cal.App.4th 1519, a tavern had been in continuous operation since 1955. A conditional use permit was issued in 1974, allowing a beer garden to be added to the tavern. (*Id.* at p. 1522.) The tavern changed hands in 1984 and the new owner spent about $1.75 million to refurbish the establishment. Four years later, he knocked out a wall and turned an adjoining commercial space into a game room. Only afterwards, he sought and obtained a temporary conditional use permit for the expansion. (*Id.* at p. 1523.) The conditional use permit was renewed more than once. However, in 1990 an application for renewal of the conditional use permit was denied. (*Ibid.*) Tenants in a nearby apartment complex and some neighboring business owners had complained about late night noise and trash problems associated with the tavern, and about drunken patrons as well. (*Id.* at p. 1524.)

The tavern owner sought a writ of administrative mandamus, pursuant to Code of Civil Procedure section 1094.5, to compel the renewal of the conditional use permit. (*Goat Hill Tavern, supra,* 6 Cal.App.4th at p. 1525.) The trial court, applying an independent judgment standard of review, granted writ relief. (*Ibid.*) We affirmed. (*Id.* at p. 1522.)

In addressing whether the tavern owner had a vested fundamental right at stake, we noted, " '[t]he term "vested" in the sense of "fundamental vested rights" to determine the scope of judicial review . . . [in an administrative mandamus proceeding] is not synonymous with . . . the "vested rights" doctrine relating to land use and development.' [Citation.] 'When an administrative decision affects a right which has been *legitimately acquired* or is otherwise vested, and when that right is of a fundamental nature from the standpoint of its economic aspect or its effect . . . in human terms and the importance . . . to the individual in the life situation, then a full and independent *judicial* review of that decision is indicated because [t]he abrogation of the right is too important to the individual to relegate it to

exclusive administrative extinction.' [Citation.]" (*Goat Hill Tavern, supra,* 6 Cal.App.4th at p. 1526.)

Given the facts before us, we concluded that the tavern owner had a fundamental vested right to continue the operation of the business. It was not "a 'purely economic privilege,' " but rather, was "the right to continue operating an established business in which [the owner had] made a substantial investment." (*Goat Hill Tavern, supra,* 6 Cal.App.4th at p. 1529.) We further explained: " 'Where a permit has been properly obtained and in reliance thereon the permittee has incurred material expense, he acquires a vested property right to the protection of which he is entitled. [Citations.]' " (*Id.* at p. 1530.) "By simply denying renewal of its conditional use permit, the city destroyed a business which [had] operated legally for 35 years. The action implicate[d] a fundamental vested right of the property owner, and the trial court was correct in applying the independent judgment test." (*Id.* at p. 1531, fn. omitted.)

The case before is equally compelling. Although we do not know exactly when Angus acquired the real property in question, we do know that Angus recorded a "Unit Agreement" with respect to the real property in 1987. In 1989, it entered into a "Unit Operating Agreement" with Columbia Gas Development Corporation.[4] Drilling began no later than 1990. The wells began producing in 1992 and continued producing until they were idled in 1998. In 2005, the Director ordered testing of the idle wells, and the testing was performed satisfactorily. Angus now desires to put the wells back on line, and has produced at least some evidence that production may be feasible.[5]

This notwithstanding, the Director has ordered the plugging and abandonment of the 28 wells. The implementation of the Order and the Decision would have the effect not only of shutting down a business that has been in existence for 20 years or more, but also of terminating the right to produce oil—an extraordinarily valuable resource, especially in the current economic era. There is no indication that the real property underlying the Springfield Unit was not legitimately acquired or that the drilling and pumping of oil was not undertaken in accordance with applicable statutory mandates. Therefore, we must conclude that the right to extract oil is vested. Moreover, the right is

---

[4] Hunt represents that, in 1989, it was known as Columbia Gas Development Corporation, and that it acquired its one-half working interest in the Springfield Unit and its one-half interest in the underlying real property in that year.

[5] At this juncture, we do not pass on the weight of the evidence or address whether it satisfies statutory requirements as set forth in the Public Resources Code.

fundamental considering its potentially massive economic aspect and its considerable effect in human terms. (*Goat Hill Tavern, supra*, 6 Cal.App.4th at p. 1526.) Certainly, a fundamental vested right is at issue.[6] (See also *San Benito Foods v. Veneman* (1996) 50 Cal.App.4th 1889 [58 Cal.Rptr.2d 571].)

The Director disagrees. He maintains that *Goat Hill Tavern, supra*, 6 Cal.App.4th 1519 is inapplicable because, in the case before us, no license or permit granting a right to operate the 28 oil wells has been issued. In this context, this is a distinction without a difference. As the Director himself states, "the Supervisor regulates how Termo and Angus drill, operate, maintain and plug and abandon the wells they use in their oil producing business." In other words, the Supervisor, through his regulatory authority, is eliminating the right of the owners of the wells to bring them back on line, to operate them, and to extract oil. To argue that the issuance of a license or permit per se is outcome determinative is to elevate form over substance. We are talking about government permission of one sort or another to carry on a business, and here, to produce oil. The principles of *Goat Hill Tavern* clearly apply.

### (3) *Alternative Statutory Standard of Review*

#### (a) *Introduction*

■ Although we have determined that a fundamental vested right is at issue for the purposes of the application of Code of Civil Procedure section 1094.5, that is not the end of our inquiry. As our Supreme Court has said, "the Legislature [is] free . . . to specify . . . that certain administrative determinations need to be subjected only to substantial evidence review rather than independent judgment review." (*Fukuda, supra*, 20 Cal.4th at p. 824, fn. 17.)

In *Tex-Cal, supra*, 24 Cal.3d 335, the court addressed just such a legislative pronouncement. The statute at issue there was Labor Code section 1160.8, pertaining to the review of final orders of the Agricultural Labor Relations Board (ALRB). (24 Cal.3d at pp. 340–341.) Section 1160.8 provides in pertinent part: "The findings of the board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall . . . be conclusive." The petitioner in that case argued that an

---

[6] Given the fact that Angus owns a one-half interest in the wells and has filed a notice of appeal challenging the judgment, which had the effect of affirming the order to shut down the wells, a fundamental vested right is clearly at stake and the judgment must be reversed and remanded for the application of the correct standard of review. In this particular context, we need not address whether Termo, standing alone, would have a fundamental vested right requiring the application of the independent judgment standard of review, considering the fact that it is not an owner of the wells.

independent judgment standard of review was required to be applied, despite the express language of section 1160.8. (*Tex-Cal, supra*, 24 Cal.3d at p. 342.) The court rejected that argument. It stated that given the statutory mandate of section 1160.8 that a substantial evidence standard of review be applied, the standard of review should not vary depending on whether a fundamental vested right was at issue. (*Tex-Cal, supra*, 24 Cal.3d at p. 346.)

The court noted that "[u]nlike [Code of Civil Procedure] section 1094.5, which arose out of and perpetuated a state of judicially created uncertainty as to which of two standards apply in a particular case, section 1160.8 provides a single standard . . . ." (*Tex-Cal, supra*, 24 Cal.3d at p. 345.) It also stated that none of the case law had "invalidated any legislative command that findings be conclusive if supported by substantial evidence." (*Ibid.*) The court explained: "For us to create a new constitutional restriction [invalidating such a legislative command] would frustrate the Legislature's intent that the ALRB serve as 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' [Citation.]" (*Id.* at p. 346, fn. omitted.)

The court concluded "that the Legislature may accord finality to the findings of a statewide agency that are supported by substantial evidence on the record considered as a whole and are made under safeguards equivalent to those provided by the [Agricultural Labor Relations Act, Labor Code section 1140 et seq.] for unfair labor practice proceedings, whether or not the California Constitution provides for that agency's exercising 'judicial power.' " (*Tex-Cal, supra*, 24 Cal.3d at p. 346; accord, *Fukuda, supra*, 20 Cal.4th at p. 822.)

(b) *Public Resources Code section 3355*

(i) *expression of standard of review*

The question is whether, in the statutory scheme at hand, the Legislature has indeed specified that the administrative determinations at issue shall be reviewed under the substantial evidence standard, not the independent judgment standard. Public Resources Code section 3354, as we have noted, permits the review of a decision of the Director through a writ of administrative mandamus proceeding. With respect to the conduct of the writ proceedings, Public Resources Code section 3355 provides: "No new or additional evidence shall be introduced in the court, but the cause shall be heard upon the record of the director. The review shall not be extended further than to determine whether or not: [¶] (a) The director acted without or in excess of his jurisdiction. [¶] (b) The order, decision, or award was procured by fraud.

[¶] (c) The order, decision, rule, or regulation is unreasonable. [¶] (d) The order, decision, regulation, or award is clearly unsupported by the evidence."

According to the Director and Hunt, subdivision (d) of Public Resources Code section 3355 enunciates the substantial evidence standard of review. However, we question whether subdivision (d) should be read in isolation. The statute as a whole charges the trial court with several tasks on review— for example, the determination of whether the order or decision is unreasonable. (Pub. Resources Code, § 3355, subd. (c).) Neither the Director nor Hunt cites any case equating a determination of reasonableness to a substantial evidence standard of review.

Even if we were to focus on Public Resources Code section 3355, subdivision (d) in isolation, however, we would not agree that it articulates a substantial evidence standard of review. Subdivision (d) requires a determination of whether the order or decision is "clearly unsupported by the evidence." This language is not as explicit as the language of Labor Code section 1160.8, at issue in *Tex-Cal, supra,* 24 Cal.3d 335, which expressly states that final orders of the ALRB shall be reviewed under the "substantial evidence" standard. (Lab. Code, § 1160.8.)

In addition to *Tex-Cal, supra,* 24 Cal.3d 335, there are other cases addressing statutes explicitly providing a substantial evidence standard of review. One such case is *Kensington University v. Council for Private Postsecondary etc. Education* (1997) 54 Cal.App.4th 27 [62 Cal.Rptr.2d 582] *(Kensington University).* There, Kensington University applied to operate as a degree-granting institution as provided in Education Code section 94310. The Council for Private Postsecondary and Vocational Education denied the application. The university sought a writ of mandate to compel the council to vacate its decision. The trial court denied relief and the university appealed. *(Kensington University, supra,* 54 Cal.App.4th at p. 30.)

With respect to the standard of review of the council's decision, Education Code section 94323, subdivision (k)(2) as then in effect provided in pertinent part: " 'The factual bases supporting the final decision set forth in the council's statement of decision shall be conclusive if supported by substantial evidence on the record considered as a whole.' [Citation.]" *(Kensington University, supra,* 54 Cal.App.4th at pp. 40–41, quoting Ed. Code, former § 94323, subd. (k)(2) repealed by Stats. 2004, ch. 740, § 1.) The appellate court held that the substantial evidence standard of review was applicable. *(Kensington University, supra,* 54 Cal.App.4th at pp. 41–42.)

The statute at issue in *Kensington University, supra,* 54 Cal.App.4th 27, just as the statute at issue in *Tex-Cal, supra,* 24 Cal.3d 335, expressly stated

that a "substantial evidence" standard of review applied. That is not the case where Public Resources Code section 3355, subdivision (d) is concerned.

### (ii) *procedural safeguards*

■ This is not our only concern, however. Even were we to agree that Public Resources Code section 3355, subdivision (d) articulated a substantial evidence standard of review, we still would not hold that standard applicable given the statutory scheme as a whole. This is because the apposite Public Resources Code provisions do not provide the requisite procedural safeguards. *Tex-Cal, supra*, 24 Cal.3d 335 requires that for a statutory substantial evidence standard of review to be applied in lieu of an otherwise applicable independent judgment standard, the statutory scheme in question must "assure[] the essentials of due process." (*Id.* at p. 344.) The due process requirement is satisfied when the statutory scheme in question provides the parties to the administrative proceeding with procedural safeguards equivalent to those provided in Labor Code section 1140 et seq. (24 Cal.3d at p. 346.)

While the Director cites *Tex-Cal, supra*, 24 Cal.3d 335, he does not address whether equivalent procedural safeguards are offered under the statutory scheme at issue. However, Hunt asserts, albeit with little discussion, that Public Resources Code sections 3350 through 3359 plainly provide such safeguards. Termo counters that the due process criteria of *Tex-Cal* are obviously not met in the statutory scheme before us. We take a closer look.

*Tex-Cal, supra*, 24 Cal.3d 335 observed that, the Alatorre-Zenovich-Dunlap-Berman Agricultural Labor Relations Act of 1975 (ALRA; Lab. Code, § 1140 et seq.) "incorporates procedural safeguards of the [National Labor Relations Act (29 U.S.C. § 151 et seq.)] including the separation of prosecutorial from adjudicatory functions ([Lab. Code,] § 1149; cf. 29 U.S.C. § 153(d)), notice, written pleadings, evidentiary hearings ([Lab. Code,] § 1160.2; cf. 29 U.S.C. § 160(b)), and a requirement that orders be accompanied by findings based on the preponderance of the reported evidence ([Lab. Code,] § 1160.3; cf. 29 U.S.C. § 160(c).)" (*Tex-Cal, supra*, 24 Cal.3d at p. 345.) Termo correctly points out that some of those safeguards are missing in the statutory scheme before us.

Termo first notes that the statutory scheme in question lacks any separation of prosecutorial and adjudicatory functions. Where the ALRA is concerned, Labor Code section 1149 provides for a general counsel of the ALRB with final authority to investigate charges, issue complaints, and prosecute such complaints before the ALRB. (Lab. Code, § 1149.) The statute requires that the duties be performed "in an objective and impartial manner without prejudice toward any party." (*Ibid.*) The general counsel is not selected by the ALRB itself, but is appointed by the Governor. (Lab. Code,

§ 1149.) The general counsel acts autonomously, and is not an agent of the ALRB. (*Belridge Farms v. Agricultural Labor Relations Bd.* (1978) 21 Cal.3d 551, 557 [147 Cal.Rptr. 165, 580 P.2d 665].) Only the general counsel, not the ALRB itself, is authorized to issue unfair labor practice complaints. (*Id.* at p. 558.)

Neither the Director nor Hunt cites any comparable provision in the Public Resources Code, vesting authority to investigate charges, issue complaints, and prosecute complaints in an individual separate from either the Supervisor who issues the order or the Director who reviews it. Termo is correct that there is no separation of prosecutorial and adjudicatory functions comparable to that found in the ALRA.

Termo next complains about inadequate notice provisions in the Public Resources Code, and contends that it did not have notice of the alleged violations that were to be addressed. Neither the Director nor Hunt cites any Public Resources Code provision requiring a notice of particular charges to be provided either before the Supervisor issues a written order concerning the operation of the wells or before the Director renders a decision, even if it may be based on grounds other than those addressed in the Supervisor's order. We observe that, once a notice of appeal from the Supervisor's order is filed, Public Resources Code section 3351 requires a hearing de novo. While Public Resources Code section 3352 requires written notice of the time and place of the hearing, it does not require that a written notice of charges be provided. In contrast, where the ALRA is concerned, Labor Code section 1160.2 requires that "a complaint stating the charges," together with advance notice of a hearing thereon, be served upon a person charged with engaging in unfair labor practices. The ALRA plainly requires notice of a type that the Public Resources Code does not.

In addition to the points Termo mentions, we notice that the ALRA provides more comprehensive procedural safeguards than the apposite Public Resources Code provisions in a few other respects as well. For example, Labor Code section 1160.2 provides that the party charged "shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony . . . ." It further provides that the proceeding shall "be conducted in accordance with the Evidence Code," to the extent practicable. However, neither Public Resources Code section 3351 nor Public Resources Code section 3352 provides a right to file an answer to the charges or requires the proceedings to be conducted in accordance with the Evidence Code.

Finally, we note that Labor Code section 1160.3 requires that the ALRB make its decision based upon the preponderance of the testimony taken. On the other hand, Public Resources Code section 3353, pertaining to the decision of the Director, does not impose a preponderance of the evidence standard, or indeed specify any standard at all.

Clearly, there are several points where the Public Resources Code provisions at issue do not provide "safeguards equivalent to those provided by the ALRA." (*Tex-Cal, supra,* 24 Cal.3d at p. 346.) Consequently, even were we to construe the standard of review set forth in Public Resources Code section 3355, subdivision (d) as a substantial evidence standard of review, we would still hold that the independent judgment standard of review must nonetheless be applied, because the apposite Public Resources Code provisions do not satisfy the due process requirements of *Tex-Cal, supra,* 24 Cal.3d 335.

### (4) *Conclusion*

■ "Since the superior court expressly indicated that it was utilizing a 'substantial evidence' standard of review rather than the appropriate 'independent judgment' standard of review, it erred and reversal is required. [Citation.]" (*San Benito Foods v. Veneman, supra,* 50 Cal.App.4th at p. 1897.) We remand for reconsideration, applying the independent judgment standard of review, as more fully described in *Fukuda, supra,* 20 Cal.4th 805. Inasmuch as we remand the case for this purpose, we need not address the parties' many other assertions of error.

## C. *STATEMENT OF DECISION*

The trial court rejected Termo's request for a statement of decision, explaining that no statement of decision is required when a trial court applies the substantial evidence standard of review in a writ of mandate proceeding. "It has been held that findings of fact by the trial court in an administrative mandamus proceeding 'are not essential to effective appellate review of the decision of the trial court' when the trial court applies the 'substantial evidence in the light of the whole record' test provided for in [Code of Civil Procedure] section 1094.5. [Citations.] However, 'findings must be made if requested' when the trial court applies the independent judgment test. [Citation.]" (*Angelier v. State Board of Pharmacy* (1997) 58 Cal.App.4th 592, 598, fn. 5 [68 Cal.Rptr.2d 213].) Consequently, when the trial court completes its review under the independent judgment standard on remand, it must, if requested, issue a statement of decision. (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67 [76 Cal.Rptr.2d 356].)

## III

## DISPOSITION

The motion to dismiss is denied. The request for judicial notice is denied. The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Termo and Angus shall recover their costs on appeal.

Sills, P. J., and O'Leary, J., concurred.