Filed 12/20/23  L.B. v. Alves CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| L.B., a Minor, etc., | C096244 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-00242829-CU-PO-GDS) |
| v. | |
| LORRAINE ALVES, | |
| Defendant and Respondent. | |

This appeal arises out of an incident in which a dog being walked by defendant Lorraine Alves jumped on, and allegedly bit, minor plaintiff L.B. after L.B. had stopped to pet the dog.  L.B. sued Lorraine Alves as well as her adult son Joseph Alves, who owned the dog together with his wife, Laine Alves.[1]  As relevant here, L.B. alleged that

---

[1] The claims against Joseph Alves are not at issue in this appeal.  Because he, Lorraine Alves, and Laine Alves share a last name, we refer to them individually by their first names.

1

Lorraine proximately caused L.B.'s injuries by negligently controlling the dog. The trial court granted the Lorraine's motion for summary judgment on the basis that she did not have a duty to control the dog in the absence of facts making the dog's attack reasonably foreseeable. L.B. appeals, contending that the trial court erred by concluding that Lorraine did not owe L.B. a duty of care.[2] We affirm.

## FACTS AND PROCEEDINGS

*Factual Background*

The material facts of this case are largely undisputed. Joseph and his wife Laine owned Stormy, a German Shepherd/Black Labrador mix. They acquired Stormy from an animal rescue organization in or around January 2016, when Stormy was 12 weeks old. Joseph put Stormy though basic puppy training classes when he was around four to six months old, which consisted of basic commands and leash walking. Joseph subsequently hired a private trainer, Terra Nicholson, to train Stormy. The training consisted of leash training and training to not be distracted or flustered around other people and animals. Laine stated that Nicholson was hired to provide leash training to have Stormy properly

---

[2] L.B. filed a motion to strike, or, in the alternative, requested that we disregard the respondent's appendix and references thereto in the respondent's brief. The respondent's appendix includes only one document, which was not in the record before the trial court at the time of the summary judgment proceedings. Because we only consider those documents before the trial court during summary judgment (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [court reviewing grant of motion for summary judgment considers all evidence offered in connection with the motion, except that which the trial court properly excluded]), we grant L.B.'s motion to strike, and we will disregard the respondent's appendix and all references thereto. (See *The Termo Co. v. Luther* (2008) 169 Cal.App.4th 394, 404 [granting motion to strike documents included in appendix not contained in the superior court file]; *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1131, fn. 4 [granting motion to strike portion of respondent's appendix containing documents never submitted to the trial court, and references to those documents]; Rules of Court, rule 8.124(b)(3) [appendix must not contain documents filed in superior court that are unnecessary for proper consideration of the issues], (g) [court may sanction party for filing noncompliant appendix].)

2

walk on a leash, and "it was also for in home. Like, to stay on a bed; to not jump on our screen. So, you know, just normal puppy training." Nicholson confirmed that she was hired to provide obedience training and to address behavioral issues, including Stormy's "jumping and being overly excitable." Joseph testified that he hired a trainer not because Stormy was exhibiting behaviors that he thought needed correcting, but rather because he wanted to have a very disciplined and well-behaved dog when he took the dog out in public. He believed Stormy was well-trained and disciplined prior to the incident.

Beginning in Spring 2017, Joseph paid his mother, Lorraine, to walk Stormy periodically, which she did up to two to three days per week, until the incident with L.B.[3] Lorraine generally took Stormy on the same one- to two-mile loop. She had not observed Stormy exhibit aggressive behavior prior to the attack, and she did not see any change in Stormy's behavior from the time she started walking him until the incident.

Lorraine was aware that Joseph had obtained training for Stormy, but Joseph never told her that he had issues with Stormy being around children or that Stormy had aggressive tendencies toward or around children. Before the incident with L.B., Lorraine testified that she had not allowed anyone to pet Stormy on their walks because no one had ever asked. However, she had observed Stormy around her grandchildren at home; he loved to play with them. Joseph testified that he had seen pictures of his niece and nephew walking Stormy, that there had been "plenty of kids" at their house without any issues, and that Lorraine had told him that she had let other children pet him on their walks.

*The Incident*

On August 8, 2017, when Stormy was about two years old and weighed approximately 75 pounds, Lorraine testified that she was walking Stormy on her normal

---

[3] Joseph testified that Lorraine was walking Stormy "essentially every day" until the bite.

route when L.B. crossed the street to meet them. She did not know L.B. or expect to see her; it was uncommon for her to see children on her walks with Stormy. She heard someone running behind her, and heard L.B. ask to pet Stormy. When she looked up, L.B. was standing about two to three feet from Stormy. She responded "no," and "he has to sit" or "he needs to sit." She had Stormy sit to her left; she and Stormy were facing L.B. Stormy sat immediately when she asked him to; he did not seem agitated or startled. Stormy was on a leash during the entire incident. Lorraine and L.B. talked for a few minutes because L.B. had run up from behind them, and Lorraine wanted to get to know L.B. before letting her pet Stormy. L.B. asked again if she could pet the dog, and Lorraine allowed her to.

L.B. recalled the conversation slightly differently. She testified that she and Lorraine said "hi" to one another, L.B. said, "You have a cute dog," and Lorraine asked her if she wanted to pet Stormy and said that he was friendly. L.B. said, "Sure" or "Okay" and petted the dog.

The parties dispute what happened after L.B. petted Stormy. Because this case was resolved on summary judgment, we set forth the evidence in the light most favorable to the plaintiff. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

L.B. testified that after she finished petting Stormy, she thanked Lorraine and said she had to go. She turned around to leave, and felt Stormy pull her by her shirt. When she turned back around, Stormy jumped on her. She fell and blacked out briefly. When she awoke Stormy was on her; she punched Stormy in the nose and pushed him back by his neck. Stormy bit her. Lorraine pulled Stormy back. Lorraine asked if L.B. was okay, L.B. said she was, and they both left.

Before Stormy jumped on L.B., Lorraine was holding Stormy's leash, but not tightly. She acknowledged there was slack in the leash, "about a foot or so" or "a foot or two." There was enough slack in the leash for Stormy to knock L.B. down without Lorraine holding him back.

4

*L.B.'s Complaint*

L.B., by and through her guardian ad litem, filed a complaint against Joseph and Lorraine. As relevant here, L.B. stated a cause of action against Lorraine for negligence and negligence per se for the injuries she sustained as a result of Stormy "attacking and/or biting" her. Lorraine answered the complaint.

*Lorraine's Motion for Summary Judgment*

Lorraine moved for summary judgment, or, in the alternative, summary adjudication. The motion argued that Lorraine had no prior knowledge of facts making it foreseeable that Stormy would attack L.B., L.B. had no evidence and could not reasonably obtain evidence that Lorraine had prior knowledge of actual facts making it foreseeable that Stormy would attack L.B., and Lorraine did not own Stormy and therefore could not be held strictly liable under Civil Code section 3342.

*L.B.'s Opposition to the Summary Judgment Motion*

L.B. opposed the motion for summary judgment. She abandoned her strict liability claim against Lorraine after learning that Joseph, not Lorraine, owned Stormy. She contended, however, there were triable issues of material fact regarding whether Lorraine could be held liable under a general negligence theory for failing to reasonably control Stormy prior to the attack. She asserted that general negligence does not require scienter or that a dog have dangerous propensities, but rather only that Lorraine was negligent in preventing the harm caused by Stormy. (Citing *Drake v. Dean* (1993) 15 Cal.App.4th 915, 924 (*Drake*).) She argued that whether Lorraine exercised reasonable control over Stormy was a question of fact precluding summary judgment. She pointed to Lorraine's failure to hold the leash tightly prior to the incident and argued that Lorraine could have avoided the incident by acting as a reasonable dog walker and holding tightly to the leash so that Stormy could not jump on L.B.

*Lorraine's Reply*

Lorraine responded that dogs are presumptively not considered abnormally dangerous unless there is notice of dangerous behavior, and that there must be a showing that a defendant knew of the dog's dangerous propensities to hold them liable for failing to control the dog. She further argued that no evidence demonstrated a reasonable person would have handled Stormy differently or how a reasonable person would have intervened to prevent the attack once it began but before injury.

*Trial Court Ruling*

The trial court issued a tentative ruling granting Lorraine's motion. The court observed that a person who is keeping a dog, but is not the dog's owner, " 'must have scienter or knowledge of the vicious propensities of the animal before liability for injuries inflicted by such animal shall attach to him' " (quoting *Buffington v. Nicholson* (1947) 78 Cal.App.2d 37, 42), and "[a]ctual knowledge of facts which render an attack by a dog foreseeable may give rise to a duty to protect a third person from the dog" (citing *Salinas v. Martin* (2008) 166 Cal.App.4th 404, 415-416). The court determined that Lorraine's evidence showed that she did not have knowledge of any aggressive behavior or dangerous propensities of Stormy prior to the incident, and thus the burden shifted to L.B. to show the existence of a triable issue of fact.

The court recognized, "A keeper of a dog may be held liable for ordinary negligence where there is proof that the dog posed a reasonably foreseeable risk of harm to others and the keeper failed to exercise ordinary care to avoid the risk." (Citing *Drake*, *supra*, 15 Cal.App.4th at p. 931.) It noted L.B.'s argument that Lorraine failed to properly control Stormy but found no evidence of a foreseeable risk of harm in the absence of evidence that Stormy had ever jumped on anyone or exhibited dangerous propensities. In the absence of a foreseeable risk of harm of which Lorraine was aware and failed to protect against, Lorraine had no duty to protect L.B. from Stormy. The

6

court further concluded that there was no evidence that Lorraine breached a general duty of care, "for example, by causing Stormy to attack [L.B.]."

At the hearing on Lorraine's motion, L.B.'s counsel emphasized that her negligence claim was based on Lorraine's mishandling of the dog or not effectively controlling the dog, and that a cause of action for negligence did not require a showing of knowledge of dangerous propensities. Following the hearing, the trial court affirmed its tentative ruling.

Judgment was entered on March 7, 2022. L.B. timely filed a notice of appeal. The case was fully briefed and assigned to the current panel in August 2023.

## DISCUSSION

### I

*Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant meets her burden of showing that a cause of action has no merit if she shows that one or more of the elements of the cause of action cannot be established, or that there is a complete defense. (*Id.*, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

We review the trial court's grant of summary judgment de novo. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017.) We consider all the evidence offered in connection with the motion, except that which the trial court properly excluded. (*Merrill v. Navegar, Inc.*, *supra*, 26 Cal.4th at p. 476.) In conducting our de novo review, we must view the evidence in a light favorable to plaintiff, liberally construing her evidentiary submission while strictly scrutinizing defendant's showing and resolving any evidentiary doubts or ambiguities in plaintiff's favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

7

In reviewing the grant of summary judgment, we employ the same three-step analysis as the trial court. " ' "First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." ' " (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 229.)

"On review of a summary judgment, the appellant has the burden of showing error, even if [s]he did not bear the burden in the trial court. [Citation.] 'The fact that we review de novo a grant of summary judgment does not mean that the trial court is a potted plant in that process.' [Citation.] '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' " (*Claudio v. Regents of the University of California*, *supra*, 134 Cal.App.4th at p. 230.)

II

*Duty of Care*

L.B. contends Lorraine owed her a duty of care to prevent foreseeable injuries, even where Stormy had never exhibited dangerous propensities, and to take reasonable measures to ensure that Stormy did not jump on or bite her. We agree with L.B.'s formulation of the applicable duty, but we disagree that Stormy's attack on L.B. was reasonably foreseeable.

A. *Legal Background*

"The common law recognizes negligence as a distinct [from strict liability] legal theory of recovery for harm caused by domestic animals that are not abnormally dangerous." (*Drake*, *supra*, 15 Cal.App.4th at p. 924; see *ibid.*, quoting Rest.2d Torts, § 518 [" 'Except for animal trespass, one who possesses or harbors a domestic animal that he does not know or have reason to know to be abnormally dangerous, is subject to liability for harm done by the animal if, but only if, . . . (b) he is negligent in failing to prevent the harm' "].)

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citation.] Recovery for negligence depends as a threshold matter on the existence of a legal duty of care. [Citation.] [¶] Duty is not universal; not every defendant owes every plaintiff a duty of care. A duty exists only if ' "the plaintiff's interests are entitled to legal protection against the defendant's conduct." ' " (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213.) " 'Duty is a question of law for the court, to be reviewed de novo on appeal.' " (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1142, quoting *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.)

" 'California law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others. (Civ. Code, § 1714, subd. (a).)' " (*Kesner v. Superior Court*, *supra*, 1 Cal.5th at p. 1142.) " '[I]n the absence of a statutory provision establishing an exception to the general rule of Civil Code section 1714, courts should create one only where "clearly supported by public policy." ' " (*Id.* at p. 1143.)

The issue we must answer as a matter of law in this case is whether Lorraine owed the 11-year-old L.B. a duty of care to protect her from Stormy. Both parties analyze the existence or nonexistence of Lorraine's duty here under the factors promulgated in *Rowland v. Christian* (1968) 69 Cal.2d 108. The *Rowland* factors are not "a freestanding

9

means of establishing duty, but instead . . . a means for deciding whether to limit a duty derived from other sources." (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 217.) Stated differently, it is "a guide for determining whether to recognize an 'exception' to the general duty of care under [Civil Code] section 1714," or an exception to a duty derived from some other source. (*Id.* at p. 218; see *Golick v. State of California* (2022) 82 Cal.App.5th 1127, 1151 ["the 'purpose of the *Rowland* factors is to determine whether the relevant circumstances warrant limiting a duty already established' "].)

The *Rowland* factors include " ' "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' " (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213, quoting *Rowland, supra*, 69 Cal.2d at p. 113.) "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis." (*Castaneda,* at p. 1213.)

B. *Foreseeability*

In assessing foreseeability, "[o]ur task ' "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed." ' " (*Colonial Van & Storage, Inc. v. Superior Court* (2022) 76 Cal.App.5th 487, 502.) What is "sufficiently likely" means what is " 'likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it

in guiding practical conduct.' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57.)

In *Drake*, the court discussed the foreseeability of harm that will give rise to a duty to protect third persons from a dog. A keeper of a dog will be liable for negligence where there is proof that the dog posed a reasonably foreseeable risk of harm to others, and the keeper failed to exercise ordinary care to avert that risk. (*Drake*, *supra*, 15 Cal.App.4th at p. 931, see *id.* at p. 925 ["In determining the keeper's liability for negligence for injuries inflicted by a domestic animal, the criterion usually adopted is one of reasonable anticipation of the occurrence, i.e., foreseeability"].) The court recognized that "negligence may be predicated on the characteristics of the animal which, although not abnormal to its class, create a foreseeable risk of harm. As to those characteristics, the owner has a duty to anticipate the harm and to exercise ordinary care to prevent the harm. [Citation.] 'The common law [] provided that the owner of an animal which was not vicious . . . but which was prone to some other potentially harmful behavior, could be held liable under a theory of negligence for any injury proximately caused by such behavior. In such cases the owner was only liable if, having knowledge of the particular propensities which created a foreseeable risk of harm, he failed to exercise reasonable care in control of the animal.' " (*Id.* at p. 929.) Similarly, a person who keeps a dog "is required to know its normal habits and tendencies," and therefore is "required to realize that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.' " (*Id.* at p. 925, quoting Rest.2d Torts, § 518, com. h.)

The *Drake* court recognized that "it is not unknown for dogs to jump on people," and therefore "it may reasonably be anticipated that a dog which has jumped on people before will do it again." (*Drake*, *supra*, 15 Cal.App.4th at p. 931.) In *Drake*, because the plaintiff had presented evidence that the defendant knew the dog " 'had a habit of

11

jumping on people,' " the court concluded that "an inference could be drawn that such conduct was reasonably foreseeable." (*Ibid.*)

The source of the parties' dispute here is not whether the keeper of a dog has the duty to prevent reasonably foreseeable injuries, but rather whether Stormy's attack on L.B. was reasonably foreseeable in light of the evidence regarding Stormy's behavior. L.B. contends it was foreseeable that Stormy would jump on and harm her because he had exhibited jumping behavior in the past.[4] However, no evidence in the record indicates that Stormy had ever jumped *on people*. The only evidence regarding the nature of Stormy's jumping behavior was Laine's testimony that the family hired a trainer to help Stormy stop jumping on the family's *screen*. We recognize that the trainer stated in her declaration that she was hired to stop Stormy's excitable and jumping behavior, but that statement does not provide evidence that Stormy had ever jumped on people.

Instead, the evidence in the record shows that Lorraine had never observed Stormy exhibit aggressive behavior, had never been told that Stormy had exhibited aggressive tendencies or behavior toward children, and had observed Stormy playing with Lorraine's grandchildren without incident. Joseph testified that Stormy had been around "plenty of kids" at his house without incident. Thus, the facts here are distinguishable from those in *Drake*, where there was evidence the dog tended to jump on people, making future jumps on people foreseeable. (*Drake*, *supra*, 15 Cal.App.4th at p. 931.)

L.B. contends that *Drake* should not be construed so narrowly, but the Restatement is in accord: "Knowledge, or reason to know, that an animal has a tendency

---

[4] Lorraine contends L.B.'s complaint alleged only that she was injured by Stormy's *bite*, not his *jump*, and therefore the only relevant inquiry here is whether it was foreseeable that Stormy would bite L.B. But L.B.'s complaint alleged that Stormy caused injuries by "attacking and/or biting" her, which reasonably includes "lunging at" or "jumping on."

to attack or fight with other animals is not necessarily knowledge or reason to know that it will attack human beings." (Rest.2d Torts, § 509, cmt. i.) Additionally, knowledge that the dog's possessor knows the dog has the playful habit of jumping up on visitors will not support liability if the dog unexpectedly bites a postman, when he never has shown any inclination to do so before. (*Ibid.*) Similarly, here, Stormy's behavior of jumping on a screen was not sufficient to make it foreseeable that Stormy would jump on a person, where there was no evidence that Stormy had ever exhibited that behavior, or any other aggressive behavior toward children, in the past.

L.B. argues it is reasonably foreseeable that Lorraine would or should have known about Stormy's jumping behavior, and that it was reasonable for Lorraine to infer that training was needed due to Stormy's jumping or excitable behavior. But there is no evidence that Lorraine was aware of Stormy's jumping behavior. Lorraine acknowledged that she was aware the family had hired a trainer, but testified to her understanding that Stormy underwent "[o]bedience training." Again, Lorraine had walked Stormy on a regular basis and had observed Stormy interact with children in the home, and there is no evidence she had ever witnessed a jumping incident. Additionally, as we have discussed, even if Lorraine had been aware of Stormy's jumping behavior, the only evidence in the record was that Stormy had jumped on screens, not on people. There was no reason for Lorraine to know or to infer that the family sent Stormy to obedience classes to correct a behavior she had never observed.

L.B. next argues it was reasonably foreseeable that Stormy would jump on her because Lorraine allowed L.B. to pet him and told her he was friendly, when in fact she had never allowed anyone to pet Stormy before on their walks. But Lorraine testified that she had not let anyone else pet Stormy because no one had asked, not because she had a reason to believe Stormy would jump on someone. Lorraine had no reason to believe that Stormy would jump on L.B. when he had never jumped on anyone before.

In the absence of any prior incidents of jumping on people, L.B. asserts that it is common knowledge that puppies and young dogs will exhibit puppy-like behavior, including jumping behavior. Courts have rejected similar attempts to generalize based on breed. (See *Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 168 ["it would be improper to take judicial notice that all adult male pit bulls are dangerous"]; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1371-1372 ["evidence that the breed of dog has certain characteristics,[ ] by itself, is insufficient to support an inference that [the defendant] had actual knowledge that his tenant's dog had any dangerous propensities"].) The fact that many puppies or young dogs have the tendency to jump did not make it foreseeable that Stormy would jump on L.B. where there was no evidence that he had exhibited that behavior in the past. A person who keeps a dog "is required to know its normal habits and tendencies" and to realize "that even ordinarily gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.' " (*Drake*, at p. 925, quoting Rest.2d Torts, § 518, com. h.) Thus, Lorraine was charged with knowing Stormy's normal habits and tendencies, and there was no evidence that suggested his normal habits and tendencies included jumping on people or biting.

We do not dispute L.B.'s contention that Stormy--a 75-pound, two-year-old, German Shepard/Black Labrador mix--was *capable* of injuring 11-year-old L.B.[5] But the issue before us is not whether Stormy *could possibly* injure L.B. Rather, the issue before us is whether it was *foreseeable* that Stormy *would* injure L.B. The undisputed evidence failed to show any indication that Stormy had jumped on or bitten a person in the past. Thus, while we recognize the existence of a duty to protect against reasonably

---

[5] Lorraine observes that L.B.'s weight was not in evidence as a comparison to Stormy's, but we fail to envision any 11-year-old girl whom a dog similar to Stormy would be *incapable* of injuring.

foreseeable injuries, here there was no such foreseeability. The lack of foreseeable harm weighs strongly in favor of finding no duty here.

C. *Burden*

L.B. argues that the burden of imposing a duty weighs in her favor because the burden on Lorraine was minimal and only required that Lorraine properly control Stormy to prevent him from jumping on her. She argues that Lorraine could have easily held Stormy tightly while he "had access to" L.B. and not allow up to two feet of slack in the leash.

We disagree. The imposition of negligence liability in cases like the one before us would obligate every dogwalker to hold the leash tightly enough to prevent the dog from reaching *any* person the dog was even *capable* of injuring, even where the dog had never exhibited aggressive behavior toward anyone. Imposing that burden in the absence of a foreseeable risk of harm is unworkable and unjustified.

D. *Other Factors*

We next consider the other *Rowland* factors to see whether they are "determinative of the duty analysis." (*Castaneda v. Olsher, supra,* 41 Cal.4th at p. 1213.) The remaining factors are "the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm . . . , and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian, supra,* 69 Cal.2d at p. 113.)

It is undisputed that L.B. was injured. As to the closeness of connection between Lorraine's conduct and L.B.'s injury, it does appear that had Lorraine more tightly leashed Stormy, it is likely he would not have been able to injure L.B. But because Lorraine had no reason to believe Stormy would jump at and bite L.B., neither party was morally blameworthy. Regarding the policy of preventing future harm, we conclude future harm is not so likely in the absence of a foreseeable risk to justify imposing a duty

here. Finally, while insurance may be available for dog bites, that factor is not sufficient to impose a duty in light of the other factors we have discussed.

In sum, we have considered all the *Rowland* factors, and they weigh strongly against imposing a duty of care on a dogwalker to protect a third party from a dog in the absence of a reasonable foreseeability of injury. Accordingly, we affirm the judgment in favor of Lorraine.

## DISPOSITION

The judgment is affirmed. Lorraine shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


                                                    /s/
                                             Duarte, J.

We concur:


    /s/
Hull, Acting P. J.


    /s/
Keithley, J.*

---

*Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.